THE FLOUR CITY NATIONAL BANK OF ROCHESTER, Respondent, *v.* MOSES SHIRE, as Administrator, etc., of JOHN HAMILTON, Deceased, Appellant.

*Stockholder in a corporation whose capital stock has not been fully paid — his liability to creditors thereof — stock is "issued and outstanding" when agreed to be issued — consent that a debtor's property be assigned to a corporation is a good consideration for the corporation's assumption of the debt.*

The certificate of incorporation of the Fahy-Schantz-Bullock Company, a corporation formed for the purpose of taking over two dry goods concerns known as J. Fahy & Co. and the Schantz-Bullock Company, provided that the capital stock of the company should consist of $150,000 in preferred stock and $150,000 in common stock. The incorporators, who were declared to be the directors for the first year, subscribed for and agreed to take capital stock in the following amounts: Fahy, 1,000 shares of common stock; Schantz and Bullock, 500 shares of common stock; Mrs. Fahy, 220 shares preferred stock; John Hamilton, 140 shares preferred stock.

Subsequently the corporation purchased the stock of goods, accounts receivable, etc., of J. Fahy & Co., agreeing to pay therefor in the following manner: $22,000 in cash, 1,000 shares of common stock and 900 shares of preferred stock to Fahy; 220 shares of preferred stock to Mrs. Fahy and 140 shares of preferred stock to John Hamilton.

The corporation also purchased like property of the Schantz-Bullock Company, agreeing to pay therefor 500 shares of its common stock.

Scrip was actually issued for 500 shares of common stock to Schantz and Bullock and about 750 shares of preferred stock to Fahy. Scrip for 1,000 shares of preferred stock, to which Fahy was entitled, was made out, but was not fully executed by the appropriate officers of the corporation. The certificates for the preferred stock subscribed for by, and agreed to be delivered to, Mrs. Fahy and Hamilton were never delivered.

The corporation subsequently became insolvent and an action was brought by a creditor thereof to enforce his claim against Hamilton's administrator under section 54 of the Stock Corporation Law (Laws of 1892, chap. 688), which provides: "the stockholders of every stock corporation shall, jointly and severally, be personally liable to its creditors to an amount equal to the amount of the stock held by them, respectively, for every debt of the corporation, until the whole amount of the capital stock issued and outstanding at the time such debt was incurred shall have been fully paid."

*Held*, that the parties, mentioned in the agreements for the purchase of the property acquired by the corporation, became entitled to receive the stipulated amounts of stock immediately upon the acceptance by the corporation of the transfer of the property, and that, although all of the stock had not actually

been issued, it would all be treated as "issued and outstanding" within the meaning of section 54 of the Stock Corporation Law;

That, as it appeared that the amount of stock agreed to be paid for the property transferred to the corporation greatly exceeded the actual value of the property, the stock had never been "fully paid" within the meaning of section 54 of the Stock Corporation Law;

That the consent of a bank, which, at the time the new corporation was formed, held Fahy's notes, to allow Fahy's property to be transferred to the corporation constituted a good consideration for notes executed by the corporation to the bank for the purpose of retiring and taking up Fahy's notes.

APPEAL by the defendant, Moses Shire, as administrator, etc., of John Hamilton, deceased, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 23d day of December, 1902, upon the report of a referee.

Plaintiff was the holder of certain unpaid notes made by the Fahy-Schantz-Bullock Company of Rochester. This corporation became insolvent and plaintiff sought to hold the estate of one John Hamilton liable for said indebtedness upon the grounds that he held stock in said corporation and that the capital stock of the latter corporation issued and outstanding had not been paid up. A claim in behalf of plaintiff having been filed with the defendant as administrator and rejected by him, a referee was duly agreed upon and appointed to hear and determine the controversy with the results above stated.

*Edward L. Jellinek*, for the appellant.

*James Breck Perkins*, for the respondent.

HISCOCK, J.:

This action was brought under section 54 of the Stock Corporation Law (Laws of 1892, chap. 688) which was in force at the time plaintiff's alleged indebtedness accrued and which provided that "the stockholders of every stock corporation shall, jointly and severally, be personally liable to its creditors to an amount equal to the amount of the stock held by them, respectively, for every debt of the corporation, until the whole amount of its capital stock issued and outstanding at the time such debt was incurred shall have been fully paid."

Upon the trial of the action and upon this appeal four questions

were and have been strenuously and elaborately argued by the counsel for the appellant going to the right of plaintiff to recover a judgment as it has done. The learned referee has decided each of these questions adversely to the appellant's contention, as, indeed, he was bound to do in order to reach the conclusion of defendant's liability arrived at by him. In our opinion he was justified by the facts and law in so doing, and the judgment entered upon his report should be affirmed.

These four questions are:

*First*, as to the "amount of its capital stock issued and outstanding" by and against the insolvent corporation at the time plaintiff's indebtedness was incurred.

*Second*, whether any stock was "held" by defendant's intestate at such or any time.

*Third*, whether the amount of capital stock issued and outstanding at the time plaintiff's indebtedness was incurred had "been fully paid," and,

*Lastly*, whether the indebtedness of plaintiff was a valid obligation against the corporation in question, and, therefore, a basis for any claim against intestate's estate.

We shall discuss these questions in the order stated, the first and second ones being so related as to be best the subject of a joint consideration.

Prior to February 15, 1899, one Fahy was carrying on a dry goods business in the city of Rochester under the name of J. Fahy & Co., and another concern known as the Schantz-Bullock Company was carrying on a similar business in the same city. For reasons which become fairly apparent upon a reading of the record in this case, it was decided by the proprietors of these businesses to put them together in a new corporation to be known as the Fahy-Schantz-Bullock Company, and thereupon proceedings were taken for the incorporation of the latter company. Upon February 11, 1899, a certificate of incorporation was duly made and filed and which was executed by Fahy, Schantz and Bullock, and also by Mrs. Fahy and the intestate. This certificate, amongst other things, provided that the capital stock of the new concern should consist of $150,000 each of preferred and common stock and that the incorporators who executed the certificate should be its directors for the

first year. Also in and by said certificate. said incorporators sub-scribed, for and agreed to take capital stock as follows: Fahy, 1,000 shares of common capital stock; Schantz and Bullock, 500 shares of common capital stock; Mrs. Fahy, 220 shares preferred capital stock; John Hamilton, the intestate, 140 shares preferred capital stock.

Thereafter, and on or about February 15, 1899, in pursuance of the plan formed, an agreement was made between the new corpora-tion thus organized and Fahy, whereby in substance and in effect the former agreed to purchase from the latter his stock of goods, fixtures, accounts receivable, etc., and to pay therefor with cash $22,000, and with capital stock of the new corporation to be issued 1,000 shares of common stock and 900 shares of preferred stock to said Fahy, and 220 shares of preferred stock to Mrs. Fahy, and 140 shares of preferred stock to the intestate.

At about the same time an agreement of similar character was made between the new corporation and the Schantz-Bullock Company, by which the former agreed to purchase of the latter its stock, etc., for 500 shares of the common stock of the new corpora-tion to be issued in equal amounts to the proprietors Schantz and Bullock, respectively.

These agreements were fully executed and carried out so far as concerned the transfer to and acquisition by the new company of the properties formerly held by Fahy and the Schantz-Bullock Company, respectively. The new company fully acquired and became pos-sessed of the property which it bargained for under the agreements referred to.

As provided, scrip was actually issued for 500 shares of the com-mon stock to Schantz and Bullock and for about 750 shares of preferred stock to Fahy. Scrip for 1,000 shares of common stock, to which Fahy was entitled, was made out but apparently not fully executed by the appropriate officers of the corporation of whom Fahy was the president and Schantz the secretary and treasurer. These certificates were kept by Schantz in the office of the corpora-tion, as stated by him upon the trial, as security for advances made to or for the benefit of Fahy. It does not appear that certificates for the preferred stock subscribed for by and agreed to be issued to Mrs. Fahy and Hamilton, respectively, were ever delivered.

The corporation continued to transact business until September, 1899, when it was compelled to go into liquidation, paying a small dividend to its creditors.

Upon facts of which the foregoing are perhaps the important ones in this connection, the referee has found that the capital stock of the corporation issued and outstanding was $276,000. This amount, it will be observed, corresponds with the amounts of stock agreed to be issued for the properties to be transferred to the new corporation, and also with the total of the amounts subscribed for by the incorporators, except that the agreements of purchase included 900 shares of preferred stock to be issued to Fahy in addition to the amounts subscribed for at the time of incorporation.

As already indicated we think that the referee was justified in reaching this conclusion.

The corporation agreed to purchase property and to give in return and payment therefor to various people named capital stock to the amount mentioned and aggregating the total found by the referee. Subsequently these agreements upon the one side were executed and carried out by the transfer to the company of the property designated. The company having thus acquired property under an agreement to give therefor to various people certain interests or shares in its capital stock, we think that such latter persons, immediately upon the acceptance of transfers by the corporation, became entitled to and vested with said interests or shares and that no further steps were necessary to accomplish this latter result. It may be admitted at once that ordinarily the corporation would issue certificates for these shares of capital stock, but it is too well settled to permit of doubt that said certificates would be merely representative of and not the real interest in the property and assets of the corporation constituting its actual capital stock. By the acceptance of property under an agreement to give therefor various interests in its capital stock, we think that the corporation for the purposes of the inquiry here being made conferred upon the parties entitled thereto ownership of the interests or shares of capital stock provided, although no scrip representing such interests or shares was issued, and that under such circumstances and upon such facts upon a fair construction of the statute under consideration the amount of capital stock provided for would be "issued and outstanding."

Our reasoning and conclusion upon this point quite necessarily covers and leads to the opinion that the intestate " held " 140 shares of the preferred stock, for this amount was included in the estimate of the referee of the total amount issued and outstanding. A few additional observations, however, may be made.

Intestate, Mrs. Fahy and John Fahy by the articles of incorporation agreed to take, respectively, 140 shares and 220 shares preferred stock and 1,000 shares of common stock. This agreement was made a matter of public record. Subsequently the agreements already referred to provided for carrying out this subscription through the issue to the people named of the amounts of stock respectively subscribed for, as part payment for the property to be transferred by Fahy to the new corporation. Intestate still again seems to have confirmed these arrangements and treated them as executed so far as the issue to him of stock was concerned by apparently forgiving certain indebtedness held by him against Fahy on account of the issue of said stock. Intestate was named as one of the directors of the corporation, and, so far as appears, the only possible qualification that he had for such directorship was the ownership of the capital stock in question. Under such circumstances, we think that intestate as well as the other individuals were holders of capital stock within the meaning of the statute. Just as we have endeavored to demonstrate that the corporation would be liable as having issued this capital stock, upon the other hand we think it clear that these various individuals acquired rights against the corporation as the owners and holders of its capital stock. It seems to us beyond doubt that under all of the facts and circumstances existing each one of them acquired certain stockholders' rights; that as such he would be entitled to share in a distribution of proceeds by way of dividends or in any distribution of the assets constituting the capital of the concern, and that he would be entitled at once to demand and receive scrip as evidence of his interest.

Upon the other hand, we think it would result in an evasion of the statute if it should be held upon evidence such as was produced in this case that a person escaped liability merely because he failed to take possession of a certificate which constituted, not his real and actual interest in a corporation, but merely evidence of the same. These five persons, including intestate, by their public acts indicated

what the capital stock of the corporation was to be and their proposed respective interests therein. Subsequently, by concert of action amongst themselves, they purported to carry out and consummate this plan. By their agreements and acts one with another they settled and agreed that the new corporation had property constituting an actual capital of $276,000, and that the various individuals designated were entitled to own and hold the capital stock thus created in the amounts, proportions and shares designated. Having adopted this arrangement amongst themselves, it strikes us that it would be an injustice to sustain the claim now made that all this amounted to nothing so far as creditors and liabilities were concerned because the incorporators had failed to take physical possession of scrip evidencing amongst themselves their various holdings and rights.

If we are right in the conclusions thus above reached, and there was issued and outstanding $276,000 of capital stock, we have no hesitation in holding, in answer to the third question above stated, that the referee was amply justified in finding that this stock was never "fully paid." There is no claim that it was paid except by the transfer to the new corporation of the properties hereinbefore mentioned. In our judgment the evidence fully justified the referee in finding such a disparity between the actual value of the property thus transferred and the amount of capital stock issued therefor, as to take the transaction outside of the rule making allowance for discretion and even honest error in the judgment of directors executing such a transaction, and to take it within the rule which governs where such directors have been guilty of willful and intentional overvaluation and resultant fraud. We shall not attempt to review in detail the evidence upon this point. It fairly indicates that a reasonable and proper valuation of the goods, fixtures and accounts receivable transferred by both Fahy and the Schantz-Bullock Company to the new corporation was at the time of such transfer far less than that fixed and allowed in the issue of stock therefor. We do not well see how the learned referee could have found otherwise than he did, in effect that there was a willful and wicked overvaluation of assets. This being so, there is no doubt about the legal conclusions which must follow.

As already indicated, in passing upon such a question as this the

law makes due allowance not only for variations in the judgment of different men passing upon the values of properties, but makes allowance for errors and mistakes of judgment when honestly made, but it does not countenance or excuse intentional or fraudulent overvaluations, and when a claim that capital stock has been fully paid is based upon such valuations it must fail and fall as it has in this case.

Passing to the last question argued here, it appears that the indebtedness held by the plaintiff against the defunct corporation was composed of two classes. Part of it was made up of notes discounted and overdrafts representing new money actually passed over to the new corporation after its organization. The rest of it represented notes given by the new corporation in effect to take up or renew notes held by the plaintiff against Fahy at the time the new corporation was formed. We do not regard as material the minute details of the manner in which this was done, whether notes of the new corporation were discounted and placed to the credit of the corporation and then used to retire the Fahy notes, or whether it was done in some other manner. There is no question but what this latter class of notes was given by the new corporation for the substantial purpose of retiring and taking up the Fahy notes. It is urged that such notes did not constitute a valid obligation against the corporation and cannot be the basis for this claim against the intestate's estate. It may be conceded that if the new corporation without consideration, to the knowledge of the plaintiff's officers, had given its notes to take up those of some other party which carried no obligation against it, there would be no indebtedness within the meaning of the statute. It is also perfectly well settled, as claimed by appellant, that if a partner or an officer of a corporation improperly uses the paper of his firm or corporation to pay his individual debts, the person receiving such paper with notice or under circumstances which ought to lead to knowledge cannot enforce the same or retain the proceeds thereof.

We do not regard the facts in this case, however, as coming within either of these rules.

The plaintiff held the notes of Fahy. The arrangement was made between him and the other parties in the new corporation which involved a transfer of all the property which he had, so far as appears,

to the latter.  An arrangement seems to have been made for using preferred capital stock of the new corporation to pay off some of his debts.  The plaintiff, however, could not be compelled to accept any such arrangement.  Neither was it obliged to sit by and see all of Fahy's property pass out of his possession and control without adequate provision for the payment of its debts.  As suggested, it undoubtedly could have instituted proceedings upon its notes, some of which were past due, to interfere with and restrain such transfer until its indebtedness was paid.

Under such circumstances an interview was had between the officers of the bank upon one hand and Mr. Fahy and Mr. Schantz, who was the treasurer of the new corporation, upon the other, and in and by which it was finally agreed that the Fahy notes should be retired with the notes of the Fahy-Schantz-Bullock Company, as was subsequently done.

We think that the consent by the bank to accept this new arrangement and to allow the plan to be carried out for the transfer of Fahy's property in the formation of the new corporation was sufficient consideration for the agreement made by the latter and for its new notes when made.  There also was entirely lacking any element of apparently fraudulent conduct upon the part of Fahy which was or could be notice to the bank of wrongdoing upon his part to the disadvantage of the corporation.  Schantz, the treasurer, was, outside of Fahy, the active manager of the new corporation.  Neither Bullock nor intestate took any particular part in the management of its financial affairs, and intestate seems to have relied largely upon Fahy, and Bullock upon Schantz.  There is nothing to indicate that in this matter the latter did not in good faith act for what he thought were the best interests, or at least the controlling necessities, of his associates in the new corporation.  There was nothing, either in the nature of the transaction or in what was said or done, to indicate to plaintiff that the arrangement was in violation of the rights of the corporation or of its stockholders.  It is true that in their original agreement it was provided by the parties that the new corporation should not assume or pay any debts of the concerns which were consolidated into it.  It was then apparently anticipated that preferred stock could be used to pay Fahy's debts, which were the ones of importance and amount.  Manifestly, however,

this hope failed of realization, and the incorporators and managers of the new corporation were compelled, in order to launch it out and keep it alive, even for a brief period, to take care of outstanding notes, as was done in the case of those held by the plaintiff.

Outside of the questions above considered we do not find anything which requires discussion. Some objections to the reception and exclusion of evidence by the referee are called to our attention. Having in mind, however, that the case was tried before a referee, and all of the other evidence produced, we do not think that any of the exceptions thus presented suggest such an injury to defendant's rights upon the trial as to call for a reversal of the judgment appealed from.

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.