United States Radiator Corporation, Appellant, v. The State of New York, Respondent.

Tax Law — tax upon transfer of corporate stock — consolidation of stock corporations, under voting trust agreement — certificates of ownership of stock, issued by trustee, taxable under section 270 of Tax Law.

1. Section 270 of the Tax Law (Cons. Laws, ch. 60) imposes a tax which is in the nature of an excise tax upon all agreements or instruments for the transfer of shares of corporate stock, and thereunder every transfer of or agreement to transfer a share in the capital stock, or right to share in the dividends declared by a corporation from its surplus profits and in the assets upon the distribution of them *pro rata* among the shareholders at its dissolution, is subject to such tax.

2. Plaintiff, a corporation, purchased certain assets of four corporations, each of which was entitled to a designated number of shares of the capital stock of the plaintiff as a consideration for the sale. A voting trust agreement was entered into which provided that a trust company as voting trustee should hold and vote for a designated period the full number of the shares of stock to which the four corporations were so entitled and a certificate for such shares was, upon the request of the corporations, issued by the plaintiff to the trust company, which thus became the record owner of the shares for voting purposes. At the request of these corporations the trust company issued to each of their stockholders a certificate that he, the stockholder, was the owner of a designated number of shares of the capital stock of the plaintiff deposited with and to be

held by the trust company under the agreement as voting trustee. *Held,* that the certificates of the trust company were taxable under the statute.

*U. S. Radiator Co.* v. *State of New York,* 151 App. Div. 367, affirmed.

(Submitted March 18, 1913; decided April 15, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 15, 1912, which affirmed a judgment of the Court of Claims dismissing the plaintiff's claim.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*E. W. Personius* for appellant. The stock transfer stamp tax is not a tax upon property but a tax upon the transaction known as the sale of capital stock. There must be a sale or agreement to sell in connection with a transfer or delivery of capital stock to make the transaction taxable, and it is the transaction of sale rather than the stock itself that is subjected by the statute to a tax. (Cons. Laws, ch. 60, § 270; *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *Hatch* v. *Reardon,* 204 U. S. 152.) The transaction involved in the case at bar was not a sale but the original issuance of stock. (*People* v. *Duffy-McInnerney Co.,* 122 App. Div. 336.) If the vendor's shares were owned by the original corporations then the stockholders had a beneficial interest therein, and the issuance of these certificates therefor is a division among the true owners of their property and not a taxable sale or transfer. (Cook on Corp. [6th ed.] 444, 445; *Beal* v. *E. S. Bank,* 67 Fed. Rep. 816; *Jermain* v. *L. S. & M. S. Ry. Co.,* 91 N. Y. 492; *Christensen* v. *Eno,* 106 N. Y. 97; *Martin* v. *N. F. P. Mfg. Co.,* 122 N. Y. 165.)

*Thomas Carmody,* Attorney-General (*Henry Selden Bacon* of counsel), for respondent. The issuance of the trust certificates not being a transfer from the United

10

States Radiator Corporation to its subscribers or their nominees, was a taxable transfer. (Cons. Laws, ch. 60, § 270.)

COLLIN, J.   The action is to recover from the state of New York a sum paid by the plaintiff, under protest and without prejudice to its rights, for stock transfer stamps.

The facts were agreed upon by the parties for submission to the Court of Claims.  The plaintiff, a corporation, purchased certain assets of each of four corporations.   Under the contracts of purchase, each of the four corporations was entitled to a designated number of shares of the capital stock of the plaintiff as a consideration for the sale.   Each of the four corporations and a trust company entered into a lawful voting trust agreement, which provided that the trust company as voting trustee should hold and vote for a designated period the full number of the shares of stock to which the four corporations were so entitled and a certificate for those shares was issued by the plaintiff, upon the request of each of the four corporations, to the trust company, which thus became the record owner of the shares for voting purposes.   Each of the four corporations (no condition forbidding) requested the issue to each stockholder therein by the trust company of a certificate for the number of shares proportionate to the number of the shares of its stock owned by him, and thereupon the trust company issued to each stockholder of the four corporations a certificate that he, the stockholder, was the owner of a designated number of shares of the capital stock of the plaintiff deposited with and to be held by the trust company under the agreement as voting trustee, and might transfer the certificate, and that all dividends received by the trust company should be paid to the holder of the certificate who should at the termination of the voting trust agreement, upon surrender of the certificate, be entitled to receive a certificate or certificates of the plain-

tiff for said shares of capital stock. Pursuant to the decision of the comptroller of the state that the certificates of the trust company were taxable under section 270 of the Tax Law, the plaintiff paid for the transfer stamps without prejudice to its rights, and brings this action to recover the sum paid.

The statutory provisions authorizing and regulating the procedure in the action are: Section 276 of the Tax Law empowers the state comptroller to ascertain whether any stock transfer tax imposed is unpaid and, if unpaid, to enforce the recovery of it and any penalty incurred by the non-payment. Section 280 (Added by ch. 186, L. 1910) empowers him to pay to a person the amount erroneously paid as the tax, and authorizes the taxpayer to file with the Court of Claims a claim rejected by the comptroller, "which shall constitute a private claim against the state and shall be subject to all the provisions of law governing such claims, except" the provisions relating to the time within which it shall be filed. The action was commenced "under the provisions of law governing such claims" which are familiar and do not require a particular reference. Section 62 of the Executive Law (Cons. Laws, ch. 18) authorizes the attorney-general, on behalf of the state to "agree upon a case containing a statement of the facts and submit a controversy for decision to a court of record which would have jurisdiction of an action brought on the same case, pursusuant to the provisions of" sections 1279, 1280, 1281 of the Code of Civil Procedure authorizing the submission to a court of record of a controversy upon facts submitted. The Court of Claims was a court of record. (Judiciary Law, § 2.)

At the time of the transactions under consideration, section 270 of the Tax Law (Cons. Laws, ch. 60) contained the following provisions: "There is hereby imposed and there shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to

sell, or memoranda of sales, or deliveries, or transfers, of shares or certificates of stock, in any domestic or foreign association, company or corporation,   *   *   *   whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money or the future transfer of any stock, on each share of one hundred dollars of face value or fraction thereof, two cents.   *   *   *   The payment of such tax shall be denoted by an adhesive stamp or stamps affixed as follows: In a case where the evidence of transfer is shown only by the books of the company the stamp shall be placed upon such books; and where the change of ownership is by transfer of a certificate the stamp shall be placed upon the certificate; and in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale to which the stamp provided for by this article shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned shall show the date thereof, the name of the seller, the amount of the sale, and the matter or thing to which it refers, and no further tax is hereby imposed upon the delivery of the certificate of stock, or upon the actual issue of a new certificate when the original certificate of stock is accompanied by the duly stamped memorandum of sale."

The section imposes the tax upon all agreements or instruments for the transfer of shares of corporate stock. It is in the nature of an excise tax on the transfer. (*People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431.) The language expresses clearly the intention of the legislature that every transfer of or agreement to transfer a share in the capital stock of a corporation, or in other

and definitive words, a right to share in the dividends declared by the directors of a corporation from its surplus profits and in the assets upon the distribution of them *pro rata* among the shareholders at its dissolution shall be subject to the tax. A share of corporate stock is the right which the shareholder has to participate according to the number of shares in the surplus profits of the corporation on a division, and in the assets or capital stock remaining after payment of its debts on its dissolution or the termination of its active existence and operation. (*Plimpton* v. *Bigelow*, 93 N. Y. 592; *Jermain* v. *Lake Shore & Mich. So. Ry. Co.*, 91 N. Y. 483.) It is created by the joint action of the corporation and the shareholder. It imports a contribution to the capital stock made by the shareholder and accepted by the corporation. When a corporation has agreed that a person shall be entitled to a certain number of shares for a consideration permitted by law and executed by the person, those shares come into existence and are owned by him. The statement in the certificate of incorporation or charter of the corporation that the capital stock is a designated amount divided into a certain number of shares, each of a named value, creates neither shares nor capital stock. It expresses the power of the corporation to acquire a capital stock. It creates potential shares which, transferred into actual shares by the acquisition of members and their payments, produce the money or property which, put into a single corporate fund, is the actual capital or capital stock on which the corporate business is undertaken and in which are the shares. It also fixes the sum of the payment necessary to create a share. The certificate of the corporation for the shares, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts. It expresses the contract between the shareholder and the corporation and his co-shareholders. But it is the payment, or the obliga-

tion to pay for shares of stock, accepted by the corporation, that creates both the shares and their ownership. (*Burrall* v. *Bushwick R. R. Co.*, 75 N. Y. 211; *Christensen* v. *Eno*, 106 N. Y. 97; *Southworth* v. *Morgan*, 205 N. Y. 293; *Buffalo & N. Y. City R. R. Co.* v. *Dudley*, 14 N. Y. 336; *Dayton* v. *Borst*, 31 N. Y. 435; *Flour City National Bank* v. *Shire*, 88 App. Div. 401; affd., 179 N. Y. 587.)   In the last case cited, Judge Hiscock, then Justice Hiscock, writing for the court, said: " The company having thus acquired property under an agreement to give therefor to various people certain interests or shares in its capital stock, we think that such latter persons, immediately upon the acceptance of transfers by the corporation, became entitled to and vested with said interests or shares and that no further steps were necessary to accomplish this latter result.   It may be admitted at once that ordinarily the corporation would issue certificates for these shares of capital stock, but it is too well settled to permit of doubt that said certificates would be merely representative of and not the real interest in the property and assets of the corporation constituting its actual capital stock."   (p. 405.)

Each of the four corporations became, upon the transfer of its assets to the plaintiff, the owner of the shares of the capital stock of the plaintiff, which were the consideration for it.   The transaction did not involve a transfer of those shares.   The shares were not transferred to the vendor corporation by plaintiff; they were created by the transaction.   At no time were they owned by the plaintiff.   At the instant of their creation they were owned by the vendor corporation, which might at any time thereafter transfer them, and any transfer of them by it would be subject to the tax imposed by said section 270.

The four corporations did not transfer the shares owned by them to the trust company.   They caused the record title to them to be placed in the trust company tempora-

rily and for an expressed and limited purpose. They remained the owners of the stock. Their ownership was subject to the right of the trust company to vote the shares at corporate elections, but the power to transfer the shares, subject to the right of the trust company to vote them, remained in the corporations. The trust company could not sell or agree to sell the shares. It had no assignable interest in them. It had evidence in the certificate that it as trustee held the legal title, but this was notice of the existence of the trust agreement which disclosed the ownership of the corporations.

The valid request of each of the four corporations to the trust company that it issue its certificate to each of the holders of shares of the stock of those corporations for shares of the stock of the plaintiff proportionate to his holding, and the compliance of the trust company, was a transfer of the shares by the corporations to their shareholders. Upon the completion of those acts the corporations ceased having the right to receive the dividends declared upon those shares and the shareholders acquired it. The ownership of the shares is in their stockholders severally, as certified by the trust company, by virtue of the assignment of it inherent in the request and the execution of the request by the trust company. The appellant does not assert or claim that the corporations own the shares. It, on the contrary, concedes that their shareholders are the owners, but asserts that they were such through and from the time of the purchase by the plaintiff of the assets of the corporations, and, therefore, there was no transfer of the shares from the corporations to them — an assertion erroneous, as already stated.

The appellant urges, with ability and earnestness, that if the four corporations did in the first instance own the shares, the transfer of them to the shareholders was a division among the true owners of their own property and, therefore, not a taxable transfer. Without deciding whether or not the conclusion correctly expresses the law,

it suffices in this case to point out that the premise given for its support is fallacious. While conditions may exist under which equity will consider the shareholders as the proprietors and the ultimate beneficiaries of the corporate interests, the fact is that a corporation is an individual being capacitated through statutory powers to acquire the title to, own and dispose of real and personal property, enter into contracts, engage in business, sue and be sued and taxed. It is the owner of all the corporate property, real and personal, and within the powers conferred upon it by the charter can deal with it as absolutely as a private individual can with his own. The whole title to it is in the corporation and the shareholders are neither tenants in common nor in any legal sense the owners of it. (*Hyatt* v. *Allen*, 56 N. Y. 553; *Gibbons* v. *Mahon*, 136 U. S. 549; *Lowry* v. *Farmers' Loan & Trust Co.*, 172 N. Y. 137; *Humphreys* v. *McKissock*, 140 U. S. 304; *Buffalo L., T. & S. D. Co.* v. *Medina Gas & El. L. Co.*, 162 N. Y. 67.) A shareholder cannot acquire title to any of the property of the corporation through the operation of the law as an administrator acquires the title to the personal property of his intestate. A corporate act alone can effect that result. When the act, as did the act in the present case, transfers to the shareholders shares of the capital stock of another corporation, it is taxable under said section 270.

The judgment should be affirmed, without costs.

Cullen, Ch. J., Werner, Cuddeback and Miller, JJ., concur; Gray and Hiscock, JJ., dissent.

Judgment affirmed.