AGRICULTURAL FINANCE CORPORATION *v.* BRINKLEY.

4-3370

Opinion delivered February 19, 1934.

*Frank C. Douglas,* for appellant.
*Holland & Barham,* for appellee.

BUTLER, J. The Agricultural Finance Corporation of Blytheville was organized under the laws of Arkansas about 1927 for the purpose of making loans to farmers through the Federal Intermediate Credit Bank of St. Louis. Samuel L. Thomas was secretary and treasurer after the first year or two until suit was filed in March, 1933, by certain stockholders to wind up the affairs of said corporation, in the chancery court for the Osceola District of Mississippi County, and Roy Nelson was ap-

pointed receiver and directed to proceed to collect notes and accounts. As such receiver, he filed this suit on April 28, 1933, and made each of the appellees defendants, as they had each borrowed from said corporation, and each had signed the other's note and mortgage.

It was agreed at the time of the submission of the case that said defendants owed said corporation a joint liability of $640 and interest. Defendants filed an answer and cross-complaint, alleging that, in order to borrow said money, they were required to become stockholders in the Agricultural Finance Corporation of Blytheville to the amount of $900; that they paid in this amount when the loan was made, but never received their stock certificates, and prayed for judgment against the receiver for $900 and interest.

The trial court found for the receiver in the sum of $640, and that the defendants were entitled to recover on their cross-complaint in the sum of $900, a difference of $260 in favor of the defendants, together with six per cent. interest thereon from June 2, 1930, until paid. From that decree is this appeal.

The appellants make two contentions; first, that the evidence does not show that the appellees paid the Finance Corporation $900 for their stock, and, if such payment was made to Samuel L. Thomas, it was made to him as the agent for the appellants, and not in his capacity as an officer of the corporation. We need not discuss the testimony adduced on this branch of the case, since we are of the opinion that it is sufficient to support the finding of fact made by the chancellor.

The next contention of the appellants, and the one we think well-founded, is that, by the payment of the $900 by appellees to Thomas, they became stockholders in the corporation, and cannot therefore offset their stock against the debts due by them. The proof shows that those borrowing from the corporation as a condition precedent for the loan were required to purchase stock in the corporation to the amount of seven and one-half per cent. of the sums borrowed. It seems to be conceded that seven and one-half per cent. of the sums borrowed by the appellees would be $900. When the loan had been

approved by the Intermediate Credit Bank, through which organization the Finance Corporation obtained its money, and when the checks were sent to the office of the local corporation, $900 was paid by the appellees to the secretary, Samuel L. Thomas, for the stock and the remainder of the proceeds of the loan was used by them in their business. Certificates of stock were not to be delivered to the appellees, but were to be retained by the corporation as part of the collateral security for the payment of the loan.

One of the appellees, who handled the transaction for himself and the others, testified that he understood that stock had to be taken in order to get the loan, and that in discussing the question as to the issuance and delivery of the stock with Thomas he was informed that the stock would be issued but would not be delivered until the loan was paid; that the stock would be held as collateral. The records of the corporation contain no entry showing the issuance of the stock and no stock certificates were discovered.

Appellees contend that the dealing between them and the secretary of the corporation amounted only to a contract for the sale and purchase of the stock, and that, as the evidence fails to show that the certificates were issued or delivered to the appellees, they did not become stockholders. They cite the rule announced in 14 C. J. at page 481, §§ 710 and 711, to the effect that, although the issue or tender of certificates of shares is not necessary to render one a stockholder in a corporation, the rule does not apply to contracts for the sale of stock by the corporation as distinguished from subscriptions. They insist that the transaction, to be considered as a sale, must have been completed by the issuance and delivery of the stock, and argue that, if the transaction was completed, the failure to issue the stock would amount to a conversion of it, and they would be entitled to recover its value as of the date the loan was consummated. It is clear that these contentions are untenable. Nothing remained to be done to complete the purchase of the stock after the $900 was paid to the secretary of the corporation, at which time the appellees became the owners of

the number of shares of stock in the corporation as $900 would purchase. It was not the intention of the parties that appellees should receive the certificates of stock until after the loan had been paid and whether or not the certificates were actually issued is immaterial in so far as the relationship existing between the appellees and the corporation is concerned. They acquired all the rights of stockholders and were subjected to all the liabilities as such the moment they paid the $900 for the stock, and were then, and are now, stockholders of the corporation. 14 C. J. 482 § 710; *Biscoe* v. *Tucker*, 11 Ark. 145; *Galbraith* v. *McDonald*, 123 Minn. 208, 143 N. W. 353, L. R. A. 1915A, page 465. The rule is clearly stated in *U. S. Radiator Corporation* v. *State*, 208 N. Y. 144, 101 N. E. 783, 46 L. R. A. (N. S.) 585, as follows: ''The certificate of the corporation for the share, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of these facts. It expresses the contract between the shareholder and the corporation and his co-shareholders. But it is the payment, or the obligation to pay for shares of stock, accepted by the corporation, that creates both the shares and their ownership.''

There was no conversion because the appellees were not entitled to the possession of the certificates of stock until after their debt was paid. Under the undisputed facts the appellants were entitled to a judgment for the balance of the debt with interest and the prayer of the cross-complaint should have been denied. The appellees may file their claim with the receiver as stockholders and receive their *pro rata* share of whatever may be due them after the debts of the corporation and the expense of the insolvency proceedings have been paid.

It follows that the decree of the trial court is reversed, and the cause remanded with directions to enter a decree in conformity with this opinion.