ARDEN FARMS Co., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 27477.)

Third Department, January 9, 1946.

Milbank, Tweed & Hope (George W. Jaques, John D. Van Cott and Daniel B. Priest of counsel), for appellant.

Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, First Assistant Attorney-General and John R. Davison, Assistant Attorney-General of counsel), for respondent.

BREWSTER, J. Claimant-appellant appeals from a judgment of the Court of Claims dismissing its claim for a refund, under the provisions of section 280 of the Tax Law, of the sum of $13,800.39, which it paid, under protest, pursuant to a ruling of the New York State Tax Commission holding claimant liable in said amount for a stock transfer tax upon an alleged transfer of a number of shares of its corporate common stock to certain voting trustees.

The facts which gave rise to the controversy are undisputed. They are summarized as follows: Claimant was originally incorporated under the laws of the State of Delaware on December 11, 1933, under the name of Western Dairies Inc., its name having been later duly changed to Arden Farms Co. It was organized as a holding company for the purpose of acquiring the outstanding securities of two incorporated dairy products companies operating in the northern and southern parts of California and known respectively as Western Dairy Products Company and Western Dairy Products, Inc. In furtherance of its corporate purposes claimant made an offer to the holders of the outstanding securities of the operating companies " to purchase their holdings and to issue or cause to be issued, and to pay, in exchange therefor shares of Preferred stock and/or Voting Trust Certificates for Common stock of the Company (all shares of Common stock issued under this offer to be issued

*to Voting Trustees), and cash, at the following rates:"*. The offer then recited the detail of the proposed rates of exchange of the securities. Its offer repeated the substance of a plan contained in an accompanying Prospectus which was referred to as designed for the preservation of the assets of the operating companies, it being recited that the then financial position and earnings of the latter were such as to make it desirable and in the interests of their security holders; the primary object of the plan being therein stated as one to give the companies immediate relief from the burden of their fixed charges. In the plan disclosed in the Prospectus it was stated that the common stock which was to be issued in exchange for the securities of the operating companies would *" be placed in a voting trust running for 10 years with Messrs. S. H. Berch, Roy E. Campbell and J. Frank Holt as voting trustees, the voting trust being terminable by the voting trustees or by 75% in interest of the registered holders of voting trust certificates."* And also that *" Under the offer, Preferred stock of the New Company and voting trust certificates for its Common stock will be exchanged for securities of the Northern and Southern Companies on the bases set forth."* The Prospectus and the offer were each dated December 15, 1933, and, under the same date, a voting trust agreement was executed by the aforesaid named voting trustees and the claimant, and the agreement was drawn between said parties and also *" the holders from time to time of Voting Trust Certificates issued hereunder as hereinafter provided."* Claimant's aforesaid offer further provided that upon its acceptance the holders of securities who desired to exchange their holdings in conformity therewith must deposit them with claimant by delivering them to its agent appointed for that purpose, namely, the Chase National Bank of the City of New York, Trust Department, Corporation Agency Division. The further details in the arrangement to accomplish the purpose above outlined, do not appear to be material to the controversy presented. A great majority of the security holders of the operating companies accepted claimant's offer and deposited their holdings in conformity thereto. As a result claimant issued 460,013 shares of its common capital stock to the voting trustees and they in turn issued voting trust certificates to the depositing securities holders in accordance with the rates prescribed in the plan and claimant's offer. Thereafter, upon demand of the State Tax Commission, claimant purchased $13,800.39 of New York stock transfer tax stamps and affixed them to a memorandum on October 28, 1941, and

canceled them, because of the State Tax Commission's claim that the tax was due upon the issuing of. the aforesaid shares of claimant's common stock to the voting trustees under the aforesaid voting trust agreement.

The tax in question is an excise tax which, as regards our inquiry, is imposed upon " all deliveries or transfers of shares * * * of stock * * * in any domestic or foreign * * * corporation * * * whether investing the holder with the beneficial interest in or legal title to said stock * * * or merely with the possession or use thereof for any purpose ". (Tax Law, § 270, subd. 1.) We are not here concerned with any sale or agreement for the sale of shares nor with any *transfer of certificates* of stock in the ordinary sense of the word. The issue of certificates to the voting trustees was, as regards any prior issue, an original one.

Respondent's position in upholding the liability to the tax is that when the " depositors " gave over their securities in the operating companies in acceptance of claimant's offer they then, and immediately thereupon, became vested with the full ownership of the shares of common stock in the claimant corporation which was prescribed in the latter's offer. This, because when they thus deposited their former holdings in acceptance of the offer they thereby paid in full for the common stock thus offered, and having done that they acquired full ownership of the latter, then and there, regardless of the matter of the issuance of stock certificates. (*Mau* v. *Montana Pacific Oil Co.,* 16 Del. Ch. 114; *Smith* v. *Universal Service Motors Co.,* 17 Del. Ch. 58; *U. S. Radiator Corp.* v. *State of New York,* 208 N. Y. 144, 149–150; *Flour City National Bank* v. *Shire,* 88 App. Div. 401, affd. 179 N. Y. 587.) It is here that respondent contends the foundation was laid for a taxable transfer of the *legal title* to shares of the common stock. The point is made that since, at least momentarily, the whole title to the shares in question thus vested; then, when, even in the further execution of their acceptance of claimant's offer, they joined the voting trust agreement, they did, by the very act of their full and complete acceptance of all the terms of the offer, actually transfer the legal title inherent in their ownership to the voting trustees, and that such transfer has been duly taxed and paid for. Respondent thus separates the offer which claimant made into two distinct parts: (1) To exchange its capital stock for issued and outstanding securities in and. of its operating companies. (2) An agreement whereby its common stock thus sold would be issued to voting trustees. Consistent with such analysis it

then divides the resultant of the acceptance of the offer into two eventualities: (1) Acquisition of full title to the common stock by the " depositors " — the legal title being then a subject matter of transfer and (2) an act of transfer of the latter to the trustees by acceptance of the voting trust agreement.

Respondent's contention has persuasive force, but I agree with appellant that there is a fallacy in its thesis in that it fails to perceive that the offer which claimant made could be accepted only in its entirety, and that when by acceptance a contract resulted, it is the latter which controlled in the creation and limitation of all rights and interests of the parties. None of such could arise in contravention or derogation to the terms of the lawful contract. Thereunder claimant bound itself to cause the common stock in which any depositor should acquire a beneficial interest, per terms of contract, to issue originally to the trustees of the agreed to voting trust. In accepting the offer the depositors in effect contracted that they would not receive the legal title thereto, but only the beneficial interest to be evidenced by the voting trust certificates. The plan set forth in the Prospectus was the one in pursuance whereof the offer was made. An integrant thereof was the voting trust agreement to which the depositors became a party upon their acceptance of the offer. The offer was accepted in its entirety. There was no alternative. May it be said then that in defiance of their express agreement there was an instant when by law the legal title vested in them? I think not. True it is that the issuance of the stock to the trustees could have lawfully been brought about only by the assent of the owners of the stock but the contract under which the owners' purchase was executed withheld the legal title from them and required its original issuance to the trustees. To say that one becomes actually, momentarily vested with the legal title when, *eo instanti* he becomes a *shareowner,* he contracts not to receive it but that it shall go to another, and that the operation of such contract resulted in an implied or fleeting theoretical transfer of the legal title to him who acquires it by the act of another, is not, in my opinion, the kind or nature of a transfer defined in the statute as taxable. The " depositors' " acceptance of claimant's offer and the resulting contract, it seems to me, constituted the issuance of the common stock to the trustees of the voting trust a detail of an original issue, free from transfer tax liability. It was thus arranged by contract in effectuation of the objective of the promulgated plan. The depositors upon becoming owners of their propor-

tionate number of shares in the common stock continued in all the ownership they acquired. They transferred none of it. They did not acquire the legal title in the usual sense that such denotes a present right to possession. This latter right, upon the creation of the depositors' ownership, *originated* in the voting trustees pursuant to the contract and as an incident of the original issue and ownership of the capital stock. In this case the depositors did not acquire even a right to receive the legal title to the common stock. (*Hudson & Manhattan R. R. Co.* v. *State*, 227 N. Y. 233; *U. S. Radiator Corp.* v. *State of New York*, 208 N. Y. 144, *supra*.) In *U. S. Radiator Corp.* v. *State of New York* (*supra*) four corporations had sold certain of their respective properties to plaintiff in consideration of a number of shares of plaintiff's capital stock. Each of the vendors then joined in voting trust agreement as to the shares thus acquired and upon their request a certificate therefor was issued by plaintiff to the trustee of a voting trust. While the question as to a stock transfer tax liability there arose because of another and later transaction than the one just referred to as to which no claim of tax liability was made, the following quotation from the opinion of the court (per COLLIN, J., pp. 150–151), is apt and pertinent, viz.: "The four corporations did not transfer the shares owned by them to the trust company. [The trustee of the voting trust.] They caused the record title to them to be placed in the trust company temporarily and for an expressed and limited purpose. They [i.e., the four corporations] remained the owners of the stock." This I regard as high dictum for the proposition that when, as in the instant case, one acquires from a corporation ownership of shares in its capital stock and arranges that the certificates evidencing the legal title thereto issue originally to the trustees of a voting trust, the latter transaction does not constitute a transfer of the shares. As regards respondent's contention in the instant case, the factual situation in the *U. S. Radiator Corp.* case (*supra*) makes a stronger premise to uphold its theory of a transfer. This for the reason that in that case it appears that the owners of the shares were free to choose respecting their disposition, whereas in the case at bar the disposition of the legal and record title was foreordained as a necessary condition to the acquisition of ownership.

The judgment appealed from should be reversed, and judgment directed in favor of claimant and against the respondent in the sum of $13,800.39, with interest from October 28, 1941, with costs. The following findings made by the court below

should be reversed, viz.: Conclusions of Law, I, II, III and IV; Findings of Fact, as found upon respondent's requests, 9, 12 and 13; Conclusions of Law, as found upon respondent's requests, 4, 5, 7, 8 and 9. The following Conclusions of Law as requested by claimant should be made, viz.: 1, 2 and 3, and makes a new finding of fact and conclusion of law, viz.: The Voting Trust Agreement, claimant's Exhibit 8, was a part of the plan embraced in the offer accepted by the depositors.

All concur.

Judgment appealed from reversed on the law and facts, and judgment directed in favor of claimant and against respondent in the sum of $13,800.39, with interest thereon from October 28, 1941, with costs. The following findings made by the court below are reversed, viz.: Conclusions of Law I, II, III and IV; Findings of Fact, found upon respondent's request, 9, 12 and 13; Conclusions of Law, found upon respondent's requests, 4, 5, 7, 8 and 9. The court finds as Conclusions of Law those contained in claimant's proposed findings submitted and rejected by the court below, numbered 1, 2 and 3.

The court makes a new finding of fact and conclusion of law, viz.: The Voting Trust Agreement, claimant's Exhibit 8, was a part of the plan embraced in the offer accepted by the depositors.