RAYMOND BIELEC and GENEVIEVE BIELEC, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent. Bielec v. Commissioner
Docket Nos. 7095-73, 7096-73, 7097-73.
United States Tax Court
T.C. Memo 1976-373; 1976 Tax Ct. Memo LEXIS 32; 35 T.C.M. (CCH) 1691; T.C.M. (RIA) 760373; December 6, 1976, Filed Victor Chini, for the petitioners. George W. Connelly, Jr. and Joan B. Alexander, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, *33 Judge: The Commissioner determined the following deficiencies in petitioners' Federal income taxes: Docket
Taxable Petitioner
Number
Year Ended
Deficiency
Raymond and Genevieve
7095-73
12/31/66
$120,148.40
Bielec[2]
Walter and Evalyn Bielec
7096-73
12/31/66
119,676.10
Bielec Wrecking and Lumber
7097-73
6/30/67
91,513.00
Corp.
The cases were consolidated for purposes of trial, briefing, and opinion. The following issues are presented for our decision: (1) whether the transfer of the Hiawatha property from Bielec Wrecking and Lumber Corp. to Bielec Realty and Development Corp. was part of a transaction qualifying as a nontaxable exchange pursuant to section 351, [3] Internal Revenue Code of 1954; and, if not, (2) whether the Commissioner properly allocated income to Bielec Wrecking and Lumber Corp. under section 482; and (3) whether Petitioners Walter and Raymond Bielec received a constructive dividend on the transfer of the Hiawatha property. *34 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated by this reference. Petitioners Raymond and Genevieve Bielec, husband and wife, resided in Syracuse, New York, at the time they filed their petition in this proceeding. They filed a joint Federal income tax return for the taxable year 1966 with the District Director of Internal Revenue at Bufalo, New York. Walter Bielec and Evalyn Bielec were husband and wife when they filed their petition in this case. They also filed a joint Federal income tax return for the taxable year 1966 with the District Director of Internal Revenue at Buffalo, New York. Evalyn Bielec died after filing the petition herein, and her estate has been substituted for her as a petitioner. Petitioner Bielec Wrecking and Lumber Corp. (hereinafter Wrecking) was incorporated under the laws of the State of New York on August 1, 1956, and had its principal office in Syracuse, New York, at the time its petition was filed. It timely filed a Federal corporate income tax return for the taxable year ended June 30, 1967, with the District Director of *35 Internal Revenue at Buffalo, New York. At all relevant times Wrecking was engaged in the business of demolishing buildings and selling lumber and scrap salvaged from buildings. Since 1963, Walter Bielec and his brother Raymond Bielec (hereinafter sometimes referred to as petitioners), have each owned one-half of the outstanding capital stock of Wrecking. During 1965, petitioners expressed their concern to Wrecking's attorney, Leslie Cohen, over the adequacy of its insurance coverage in light of the risky nature of the corporation's business. In order to protect corporate real estate, in particular certain substantially appreciated land known as the Hiawatha property, from potential liability claims, Mr. Cohen suggested that it be transferred to a separate corporation.As a result of their discussions, petitioners employed Mr. Cohen to organize Bielec Realty and Development Cor. (hereinafter Realty), which was incorporated under the laws of the State of New York on May 19, 1965. The property transferred to Realty by petitioners upon incorporation consisted of an entity known as E-Z Spray Co. and real property known as the Onondaga land. The funds used to acquire E-Z Spray Co. *36 were received by petitioners from Wrecking during 1964 as a bonus. The Onondaga property was received by petitioners from Wrecking as part payment of a $52,000 bonus on May 19, 1965.Both distributions were reported by petitioners on their Federal income tax returns filed for the respective taxable years. The Hiawatha property was not transferred to Realty upon incorporation. The incorporation transfers were reflected on Realty's books by the following journal entry: E-Z Spray Company Investment
$31,353.14
Land, Onondaga Land
11,982.80
Capital - Walter
$21,667.97
Capital - Raymond
21,667.97
Although petitioners, as coequal owners of Realty, were each entitled to receive one share of Realty stock at the time of incorporation, no stock certificates were issued. At all relevant times the business of Realty has been leasing real estate and operating a car wash. During 1966, petitioners were advised by their accountant, Thomas Baker, that the Hiawatha property could be transferred from Wrecking to Realty without the imposition of income tax if stock representing 80 percent of the outstanding stock of Realty were received in exchange for the transfer of the *37 property. Petitioners, as directors and officers of both Wrecking and Realty, discussed and approved the transfer of the Hiawatha property for stock of Realty. Petitioners believed that the proposed exchange could be accomplished without recognition of gain and would not have consummated the transaction otherwise. The Hiawatha property was transferred from Wrecking to Realty on December 30, 1966, at which time it had a fair market value of $165,000. After the transfer was made, Walter Bielec, on the advice of Mr. Baker, instructed Mr. Cohen to issue the necessary stock. At the time of the transfer the corporate records of Wrecking and Realty had been misplaced. Mr. Cohen decided to delay the issuance of the share certificate until the corporate books were either found or replaced when a resolution authorizing the exchange could be recorded. However, no share certificate was issued until February 28, 1971, when petitioners were each issued a certificate dated May 19, 1965, representing one share of Realty stock and Wrecking was issued a certificate dated December 30, 1966, reflecting the ownership of nine shares. Wrecking has never had any formal board of directors meetings, nor *38 have any minutes of informal meetings been prepared. At the time of the transfer, the transaction was recorded by Mr. Baker in the books of both corporations. The journal entry reflecting the transfer on Realty's books was as follows: Land - Hiawatha
$18,949
Land - E. Syracuse
20,023
Mortgage Payable
$ 5,000
Loan Payable - Raymond
16,986
Loan Payable - Walter
16,986
The journal entry reflecting the transfer on Wrecking's books was as follows: Mortgage Payable
$ 3,000
Loan Payable - Raymond
17,986
Loan Payable - Walter
17,986
Hiawatha Land
$18,949
Accts Rec - E. Syracuse Land
20,023
The transaction was reported on Schedule D of Wrecking's Federal corporate income tax return for the taxable year ended June 30, 1967 under the section entitled "Sale or Exchange of Property under Section 1231" at a gross sales price equal to Wrecking's basis in the property. Neither the return nor the documents attached thereto indicated that the transfer was intended to qualify as a tax-free exchange under section 351. Each of Wrecking's income tax returns for the taxable years ended June 30, 1967 through June 30, 1970, contain a statement to *39 the effect that Wrecking did not own 50 percent of the stock of a domestic corporation at the end of the particular taxable year, and none of such returns reflect an investment in the stock of Realty on the attached balance sheet. Although not appearing in the attached balance sheet, Wrecking's income tax return for the taxable year ended June 30, 1971, reflects that it owned 81.8 percent of the stock of Realty at the end of the taxable year. Realty's income tax returns for the taxable years 1967 through 1970 indicate that petitioners were the owners of all of its voting stock at the end of the respective taxable years, while the income tax return for the year 1971 shows Wrecking as the owner of 82 percent of its stock. Mr. Baker prepared the Federal income tax returns of Wrecking and Realty for each of the above-mentioned taxable years. The Commissioner, in his statutory notice of deficiency mailed to Wrecking, allocated income to Wrecking under section 482 as a result of the transfer of the Hiawatha land to Realty in the amount by which its fair market value exceeded Wrecking's basis in the property. In his statutory notices of deficiency mailed to Raymond and Genevieve Bielec *40 and Walter and Evalyn Bielec, he determined that petitioners received a constructive dividend on the transfer of the Hiawatha property. OPINION During 1965 Walter and Raymond Bielec, the sole shareholders and directors of Wrecking, expressed their concern to Wrecking's attorney, Leslie Cohen, that its insurance was inadequate to cover possible claims against the corporation. In order to protect corporate real estate, in particular certain valuable land of the corporation known as the Hiawatha property, from potential claims of injured parties, Mr. Cohen suggested that it be transferred to a separate corporation. Pursuant to their discussions, Realty was incorporated by petitioners under the laws of the State of New York on May 19, 1965. No stock certificates were issued to petitioners upon the organization of Realty. Petitioners were advised by their accountant, Thomas Baker, that the Hiawatha property could be transferred to Realty without recognition of gain if 80 percent of the outstanding stock of Realty were received by Wrecking in exchange. Petitioners, acting in their capacity as directors of Wrecking and Realty, approved the proposed transaction believing that it *41 could be accomplished tax-free. After the property was transferred on December 30, 1966, Walter Bielec, on the advice of Mr. Baker, instructed Mr. Cohen to issue the necessary shares. However, no stock certificate evidencing the stock to be received in exchange was issued until 1971, when certificates representing two shares of Realty stock were issued to petitioners and a certificate representing nine shares of stock was issued to Wrecking. The first question for our decision is whether the transfer of the Hiawatha property qualifies as a tax-free exchange pursuant to section 351. [4]
*42 Section 351 provides that no "gain or loss shall be recognized if property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation" and immediately after the exchange such person or persons are in "control" of the corporation. Section 368(c) defines "control" as used in section 351 to mean "the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation." Thus, the critical requirement for the application of section 351 is the exchange of property for stock constituting "control." Wrecking maintains that it complied with the requirements of section 351 on the transfer of the Hiawatha property to Realty in 1966, despite the fact that a stock certificate representing voting control was not formally issued to Wrecking until 1971. Respondent, on the other hand, contends that the requirements of section 351 were not satisfied because Wrecking neither received *43 stock of Realty nor controlled Realty after the exchange. We agree with petitioner. Respondent apparently entertains the erroneous belief that the actual issuance of a stock certificate is a sinequanon to the ownership of an interest in a corporation. That a stock certificate was not issued to Wrecking at the time of the transfer of the Hiawatha property does not necessarily prevent the creation of a stockholder relationship or the satisfaction of the requirements of section 351.See Federal Grain Corp.,18 B.T.A. 242 (1929). "The certificate of the corporation for the shares, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts." U.S. Radiator Corp. v. State of New York,208 N.Y. 144, 149, 101 N.E. 783, 785 (1913). The issuance and acceptance of the certificate merely show an acknowledgement of those facts on both sides; however, such acknowledgement may be equally inferred from other facts in the absence of a certificate. In Re McCafferty's Will,264 N.Y.S. 38 (1933); *44 Wheeler v. Millar,90 N.Y. 353 (1882). "It is the payment, or the obligation to pay for shares of stock, accepted by the corporation that creates both the shares and their ownership." U.S. Radiator Co. v. State of New York,supra at 150. Respondent points to the failure of the corporate books and income tax returns of Wrecking and Realty to reflect Wrecking's alleged ownership of at least 80 percent of the stock of Realty after the transfer of the Hiawatha property in support of his position that Wrecking did not receive a controlling interest in Realty within the meaning of section 368(c) in exchange for the property. Although corporate records are admissible evidence of the fact of stockholding and ownership, they are not necessarily conclusive. One may be a stockholder although he is not so recorded on the books of the corporation, and a court may determine the existence of stock ownership in the proper case. Application of Friedman,54 N.Y.S. 2d 45 (1945), modified 56 N.Y.S.2d 516 (1945); Diamond v. Davis,38 N.Y.S. 2d 93 (1942), affd 39 N.Y.S. 2d 412 (1942); White v. Melillo,300 N.Y.S. 1275 (1937). *45 On the basis of the facts before us, we are satisfied that Wrecking received stock of Realty constituting "control" within the meaning of section 368(c) in exchange for the transfer of the Hiawatha property. After carefully considering the testimony of the various witnesses, we are convinced that the failure of the income tax returns and corporate books to reflect the creation of a stockholder relationship upon the transfer was due to Mr. Baker's lack of knowledge as to the proper manner of recording the transaction and that the various statements on the income tax returns relating to the ownership of the stock of Realty prior to the formal issuance of the share certificates in 1971 were merely the result of oversight on his part. It is well settled that where book entries are found to be at variance with the facts, the decision must rest on the facts. Doyle v. Mitchell Brothers Co.,247 U.S. 179 (1918); Jacob M. Kaplan,21 T.C. 134 (1953). Accordingly, we conclude that the transfer of the Hiawatha property was part of a transaction qualifying as a nontaxable exchange pursuant to section 351. Implicit in our holding with respect to the applicability *46 of section 351 is the conclusion that the allocation of income to Wrecking under section 482 and the determination of the existence of a constructive dividend to petitioners as a result of the transfer of the Hiawatha property were both erroneous, for such adjustments were both based on the determination that the property was transferred at less than its fair market value. [5]
Decisions will be entered for the petitioners. Footnotes
1. Cases of the following petitioners are consolidated herewith: Estate of Evalyn Bielec, Deceased, Walter Bielec, Executor, and Walter Bielec, docket No. 7096-73; and Bielec Wrecking & Lumber Corp., docket No. 7097-73.↩
2. Evalyn Bielec died subsequent to filing the petition herein. Her estate has been substituted for her as a petitioner.↩
3. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
4. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) GENERAL RULE.--No gain or loss shall be recognized if property is transferred to a corporation (including, in the case of transfers made on or before June 30, 1967, an investment company) by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property. (b) RECEIPT OF PROPERTY.--If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then-- (1) gain (if any) to such recipient shall be recognized, but not in excess of -- (A) the amount of money received, plus (B) the fair market value of such other property received; and (2) no loss to such recipient shall be recognized.↩
5. We express no opinion as to whether a constructive dividend can exist in conjunction with an income allocation under section 482 on the mere transfer of property between commonly controlled corporations at less than fair market value as determined by respondent.↩