## LITTRELL v. CRAIG.
### No. 7017.

District Court, W. D. Pennsylvania.
Oct. 4, 1932.

492

Dean D. Sturgis, of Uniontown, Pa., for plaintiff.

John H. Sorg, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is an action by the receiver of an insolvent national bank to recover the assessment made by the Comptroller of the Currency against the defendant on stock alleged to have been owned by him when the assessment was made. The defense is that the defendant was not a stockholder. A jury trial was waived, and the facts were agreed upon by the parties. So far as they are pertinent to the question involved, they are briefly as follows:

Defendant, in September and October of 1930, was the owner of 10 shares of the stock of the Fayette Title & Trust Company, a banking corporation under the laws of Pennsylvania. While such a stockholder, the board of directors of the Fayette Title & Trust Company and the board of directors of the National Bank of Fayette County entered into a written agreement to consolidate said trust company and bank under the Act of November 7, 1918, § 3, as amended by Act February 25, 1927, § 1 (12 U. S. C. § 34a [12 USCA § 34a]). The agreement provided that the consolidated bank would have 20,000 shares of stock of the par value of $25 each; 18,000 shares thereof were allotted to the stockholders of the National Bank of Fayette County; and 2,000 shares to the stockholders of the Fayette Title & Trust Company. The stockholders of the trust company were required to contribute $150,000 cash for capital, surplus, and profits of the consolidated bank. Each shareholder of the trust company was to receive one and one-third shares of the stock of the consolidated bank for each share that they held in the trust company. The contract was approved by the stockholders of the bank and trust company October 28, 1930, after notice of the meeting had been given to all stockholders including defendant. On the same date the trust company made an agreement with the Fayette Title & Trust Building, a corporation of which the stock thereof was wholly owned by the trust company, whereby the building company was to pay the $150,000 which the stockholders of the trust company were required under the aforesaid agreement to pay to the consolidated bank. The stockholders of the trust company were to assign the stock received from the consolidated bank or issue a power of attorney therefor in favor of the Fayette Title & Trust Building. This stock was to remain the property of the building company until it was paid for by the aforesaid stockholders.

In pursuance to the contracts aforesaid, the trust company and the national bank aforesaid were consolidated. The building company advanced the $150,000 aforesaid, and received from the consolidated bank the stock of stockholders of the consolidated bank issued to former stockholders of the trust company, who executed transfers or powers of attorney. Thirteen and one-third shares of the stock of the consolidated bank were issued to defendant, who was duly registered as the owner thereof on the books of the consolidated bank. The stock was not delivered to defendant, but was held by the consolidated bank as were also two dividend checks for dividends declared thereon. Defendant did not assign said stock to the building company in pursuance to the agreement aforesaid. Defendant did not know that said stock had been issued to him. He did not attend the stockholders' meeting of October 28, 1930. He had no actual knowledge of what was done thereat, or of any of the proceedings subsequent thereto, until he received notice of the assessment by the Comptroller of the Currency against the stock registered in his

name on the books of the consolidated bank. The Comptroller of the Currency found the consolidated bank insolvent October 12, 1931. He subsequently appointed plaintiff receiver thereof, and on November 30, 1931, made an assessment of $25 per share against all the stock outstanding, including that registered in the name of the defendant.

■ The assessment was made by virtue of R. S. § 5151 (12 U. S. C. § 63 [12 USCA' § 63]), which provides that: "The shareholders of every national banking association shall be held individually responsible, * * * and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

The purpose in the creating of this liability to assessment against stockholders was for the protection of depositors and other creditors of such banks.

In Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 589, 45 L. Ed. 822, the Supreme Court said: "The present suit is primarily in the interest of creditors of the bank. It is based upon a statute designed not only for their protection, but to give confidence to all dealing with national banks in respect of their contracts, debts, and engagements, as well as to stockholders generally."

■ The term "shareholders" as used in the act is broad enough to include those persons who permit their names to be registered as stockholders on the books of the bank.

In Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 471, 41 L. Ed. 844, it is stated: "It is true that one who does not in fact invest his money in such shares, but who, although receiving them simply as collateral security for the debts or obligations, holds himself out on the books of the association as true owner, may be treated as the owner, and therefore liable to assessment, when the association becomes insolvent and goes into the hands of a receiver. But this is upon the ground that, by allowing his name to appear upon the stock list as owner, he represents that he is such owner; and he will not be permitted, after the bank fails, and when an assessment is made, to assume any other position as against creditors."

In Kenyon v. Fowler, 155 F. 107, 108 (C. C. A. 2), an action was brought by the receiver of a national bank to recover an assessment against a stockholder who had no interest in the stock against which the assessment was made. A broker had purchased the stock for another purpose. Without the defendant's knowledge, he placed the stock in the defendant's name. The defendant, at his request, made a blank assignment thereof, and left the certificate with the broker. The defendant afterwards forgot all about the transaction. The court held that the defendant was liable for the assessment, saying: "It cannot be denied that the rule invoked by the plaintiff, and followed by the Circuit Court, is a severe and drastic one imposing upon the stockholder the duty, after he has sold and assigned his stock, of seeing to it that his name is removed from the books of the bank. In the case at bar the defendant would have had no difficulty in doing this, but in many cases, where the certificates are assigned in blank and the stockholder does not know who the purchaser is, it might become an exceedingly arduous and complicated undertaking. Nevertheless, we are constrained to hold, under the authorities which must govern our action, that the court below was right in directing a verdict for the plaintiff. Harsh as the rule may seem, it is clear that it is necessary for the speedy and efficient winding up by the Comptroller of the affairs of insolvent banks. He cannot enter upon an investigation and hear proofs pro and con to determine who are the stockholders, and the reasons are manifest and cogent for holding that, in making his assessment, he is justified in relying upon statements found in books of the bank. They are at least prima facie evidence. There was nothing to indicate to the Comptroller that the defendant had parted with his stock and the defendant, with full knowledge of the facts, not only failed to repudiate the action of Reynolds in having the shares taken in his name, but took no steps to have them registered in the name of the true owner. He cannot now, as against creditors, be permitted to dispute his liability." •

See, also, Case, Receiver, v. Small et al., 10 F. 722 (C. C. E. D. La.); Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266; Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Houghton v. Hubbell, 91 F. 453 (C. C. A. 1); Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531, and Finn v. Brown, 142 U. S. 56, 12 S. Ct. 136, 35 L. Ed. 936.

Was the defendant a stockholder within the meaning of R. S. § 5151 (12 USCA § 63), aforesaid? The Act of February 25, 1927, § 1 (12 U. S. C. 34a [12 USCA § 34a]), stated: "Any bank incorporated under the laws of any State, * * * may be consolidat-

ed with a national banking association located in the same county, city, town, or village under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association or bank proposing to consolidate, and which agreement shall be ratified and confirmed by the affirmative vote of the shareholders of each such association or bank owning at least two-thirds of its capital stock outstanding. * * * When such consolidation shall have been effected and approved by the comptroller any shareholder of either the association or of the State or District bank so consolidated, who has not voted for such consolidation, may give notice to the directors of the consolidated association within twenty days from the date of the certificate of approval of the comptroller that he dissents from the plan of consolidation as adopted and approved, whereupon he shall be entitled to receive the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons," etc.

Defendant knew when he received the notice of the meeting of the stockholders of the Fayette Title & Trust Company to be held October 28, 1931, that it was proposed to take action on a contract for the consolidation of the trust company and the bank. He was hence chargeable with notice of the action taken at that meeting, which included the approval by the stockholders of the agreement aforesaid, the authorized issuance of stock in the consolidated bank to the defendant, and the arrangement for the payment of the cash consideration of $150,000 by the building company. He also was visited with knowledge of the law that, if he desired to dissent from such consolidation, he had a right to have his stock appraised and to receive the price fixed therefor. With this knowledge defendant did nothing; he did not attend the stockholders' meeting; he made no inquiry as to what had been done thereafter, and made no attempt to have his stock appraised. He permitted the stock to be issued and registered in his name as provided for in the action taken. It seems to follow, therefore, that, in a proceeding such as this for the benefit of stockholders, he is a stockholder within the meaning of the act under which the assessment was made.

We might add that there is a presumption of ownership in defendant from the fact that the stock was issued and registered in his name; also the fact that the defendant never received the stock certificate is

no defense to the statutory action aforesaid. Williams v. Stone, 25 F.(2d) 831 (C. C. A. 4).

The court is of the opinion that, under the facts as agreed upon by the parties, the defendant was a stockholder in the National Bank of Fayette County and liable for the assessment sued for, and therefore directs that judgment be entered for the plaintiff and against the defendant in the sum of $333.34, with interest thereon from January 6, 1932.