GIBSON v. OSWALT.

1. BANKS AND BANKING—CONSOLIDATION—STATUS OF STOCKHOLDERS. Status of stockholders of consolidating bank is determined by contract of consolidation and their relation thereto, not by statutes permitting consolidation, when receiver of consolidated bank seeks to enforce stockholders' statutory liability after business of bank has been taken over but before shares of stock have been delivered to stockholders of consolidating bank (3 Comp. Laws 1929, §§ 11945, 11954, 11955).

2. SAME—INCREASE OF STOCK—SUBSCRIPTION.

In suit by receiver of consolidated bank to enforce stockholders' statutory liability, increase of capital stock of consolidated bank *held*, valid, where assets turned over by consolidating bank had book value in excess of liabilities equal to increase and were payment for same (3 Comp. Laws 1929, § 11945).

3. SAME—STOCK SUBSCRIPTION—CONTRACT OF CONSOLIDATION.

Contract of consolidation between banks *held*, sufficient to constitute subscription to increase of stock of consolidated bank, where contract contemplated such increase, since subscription does not need to be in any stated form (3 Comp. Laws 1929, § 11908).

4. CORPORATIONS—STOCK CERTIFICATES—POSSESSION.

A certificate of stock is merely evidence of ownership of shares and its issue or possession is not necessary to constitute one a stockholder.

5. SAME—RECORD OF STOCK CERTIFICATES.

Fact that bank failed to keep proper record of stockholders did not affect ownership of shares since one may be a stockholder though he is not so recorded on the books of the corporation.

6. BANKS AND BANKING—CONSOLIDATION—EFFECT OF CONTRACT.

Shares of stock representing increase of capital stock of consolidated bank became the property of parties entitled thereto under contract of consolidation upon transfer of assets of consolidating bank to consolidated bank.

7. CONTRACTS—CONSTRUCTION.

Definite provisions of a contract must prevail over uncertain construction dependent upon extraneous evidence.

8. BANKS AND BANKING—CONSOLIDATION—EXPRESS ASSENT TO TRANSFER OF STOCK.

Stockholders of consolidating bank became stockholders of consolidated bank by express contract and assent where they approved the consolidation and contract therefor either personally or by proxy.

9. SAME—ESTOPPEL.

Stockholders of consolidating bank who had notice of stockholders' meeting, were informed of its purpose to consider plan of consolidation and charged with knowledge of said plan and its adoption but remained silent until suit by receiver of

consolidated bank to enforce stockholders' statutory liability *held*, stockholders of latter bank by estoppel (3 Comp. Laws 1929, § 11945).

10. SAME—CONSOLIDATION—ESTOPPEL—EQUITY.

Stockholders who had notice of proposed consolidation of their bank with another, which was consummated without their express assent, may not equitably deny status as stockholders in consolidated bank upon suit by its receiver to enforce statutory liability after project failed four months after consolidation especially in a case where their liability in the consolidated bank is but half that of what it would have been if no consolidation had taken place (3 Comp. Laws 1929, § 11945).

11. SAME—TERMINATION OF STOCK OWNERSHIP—ASSESSMENT.

Ownership of bank stock is not terminated merely by failure to pay assessment nor until sale of the stock (3 Comp. Laws 1929, § 11941).

12. SAME—STOCK OWNERSHIP—ESTOPPEL—ASSESSMENT.

Stockholder of bank whose account was charged with amount of assessment although he claimed the charge was made without his knowledge or consent, *held*, owner of stock at time of subsequent consolidation with another bank by reason of estoppel and notwithstanding alleged failure to pay stock assessment (3 Comp. Laws 1929, § 11941).

13. SAME—OWNERSHIP OF STOCK OF CONSOLIDATING BANK.

In suit by receiver of consolidated bank to enforce stockholders' statutory liability, determination is not made whether stock of consolidating bank actually became vested in consolidated bank where contract of consolidation is not clear and matter is not necessary to decision (3 Comp. Laws 1929, § 11945).

14. SAME—RECEIVERS—REFORMATION OF CONSOLIDATION CONTRACT—DEFENSES.

Action by receiver of consolidated bank to reform contract of consolidation so as to provide that said bank assumed only liabilities shown on books of consolidating bank *held*, no bar to his suit to enforce statutory liability of all stockholders of consolidated bank including those formerly stockholders of consolidating bank (3 Comp. Laws 1929, § 11945).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 12, 1934. (Docket No. 98, Calendar No. 38,051.) Decided December 10, 1934.

Bill by Karl Gibson, receiver of the Farmer's State Bank, against Louis J. Oswalt and others to enforce bank stockholders' statutory liability. Decree for plaintiff. Defendants Oswalt, Hudson, Richardson, White and Fair appeal. Affirmed.

*Charles H. Farrell* and *Richard H. Paulson,* for plaintiff.

*Mason & Sharpe,* for defendants Oswalt, Hudson and Richardson.

*Harry C. Howard* and *William J. Howard,* for defendants White.

FEAD, J. As of May 5, 1931, the First State Bank of Vicksburg was consolidated with and into the Farmers State Bank. The latter closed its doors September 15, 1931. Plaintiff, as receiver of the Farmers State Bank, filed this bill to enforce the statutory liability of the stockholders under 3 Comp. Laws 1929, § 11945, and had decree. This appeal concerns only those defendants who were stockholders of the First State Bank. Plaintiff claims they became stockholders of the Farmers State Bank by the consolidation.

The consolidation was conducted under the direction of the State banking department. The First State Bank had a capital of $30,000 and about $2,600 surplus and profit. By order of the department, assets aggregating $17,800 were charged off, leaving the capital impaired. To restore it, an assessment of 50 per cent. was levied against the stock under 3 Comp. Laws 1929, § 11941, and was paid.

The Farmers State Bank increased its capital from $25,000 to $40,000. The resolution of the stockholders thereto provided:

"That the additional 150 shares be at once set aside for exchange for the stock of the First State Bank as mentioned in the agreement."

The plan of consolidation, with contract therefor prepared by the banking department, was submitted to the directors and stockholders of the respective banks, after due notice received by all of them, and was approved by a sufficient vote. The notice to the stockholders of the First State Bank recited:

"This special meeting is called for the purpose of considering a proposed agreement as prepared by the commissioner of banking for the State of Michigan, for the consolidation of the First State Bank of Vicksburg, Michigan, with the Farmers State Bank of Vicksburg, Michigan, the said proposed agreement having been heretofore approved and sanctioned by the board of directors of said First State Bank."

At the stockholders' meeting the contract of consolidation was read and approved, its execution authorized, and the officers directed to execute all instruments necessary to carry out the agreement. The contract, formal parts omitted, was:

"*Whereas,* it has been deemed desirable to consolidate the assets and business of the parties hereto, and

"*Whereas,* it is the purpose of the parties hereto to effect such consolidation by the liquidation of the first party and surrender of its charter, and the acquisition of its business and affairs by the second party through the continuance of its business and charter:

"*Now, therefore,* for the purpose of more effectually stating the terms and conditions of such consolidation and establishing the means of carrying the same into effect, it is hereby agreed between the respective parties hereto as follows:

"*First,* Forthwith upon the execution of this agreement, said second party agrees to increase its capital stock from the presently authorized $25,000

to $40,000, consisting of 400 shares of the par value of $100 each, all of which increase of 150 shares shall be at once set aside for conversion as hereinafter more fully set forth.

"*Second,* The 150 shares of stock set aside for conversion shall be delivered to stockholders of the first party on the basis of one share of stock of the First State Bank of Vicksburg of the par value of $100 for one-half share of stock of the Farmers State Bank of Vicksburg of the par value of $100.

"*Third,* Party of the first part hereby agrees to sell, assign, set over and transfer to the second party all of the assets of every name, nature and kind, real, personal and mixed, including all intangibles, good will, *et al.,* except as hereinafter provided, and second party, in consideration thereof, does hereby assume all of the liabilities of the first party of every kind and agrees to discharge the same in accordance with their respective terms and conditions. In consideration of such sale and transfer, second party further agrees that there will be delivered to first party 150 shares of its fully paid capital stock of the par value of $100, as hereinbefore set forth, which said 150 shares shall be and are hereby accepted in full compensation of such net assets.

"*Fourth,* Those assets which have been charged to the profit and loss account of the first party prior to the date of consolidation, and which are non-book assets, shall remain the property of the first party. First party shall have no interest or claim in any assets taken over which have been depreciated by any charge to profit and loss.

"*Fifth,* The consolidation and/or purchase of assets contemplated herein is to be effectuated as of the fifth day of May, 1931.

"*Sixth,* Each of the parties hereto agrees with the other that they will execute and deliver or will cause to be executed and delivered to the other all such documents, papers, conveyances, releases, bills of

sale or other documents and papers as may be necessary to carry this agreement into effect."

The Farmers State Bank took possession of all records and assets of the First State Bank, except the assets charged off, and conducted the business until it closed.

Some time after the consolidation, stock certificates covering the $15,000 increase were filled out, running to the stockholders of the First State Bank in the agreed proportion, but they were not signed by the cashier of the Farmers State Bank until the day before it closed and after the directors had decided it could not open the next morning. No certificates were actually delivered. Only one person, Charles J. Hudson, asked for a certificate. No excuse was offered for failure to deliver to him. No excuse was made for failure to deliver to others except that they had not asked for certificates. The stock transfer book of the Farmers State Bank, kept in pursuance of 3 Comp. Laws 1929, § 11944, did not show defendants as stockholders nor in any way account for the $15,000 increase.

It is defendants' claim that they were not stockholders of the Farmers State Bank when it became insolvent and are not liable for the assessment. They may be divided into classes occupying different positions. Some attended the stockholders' meeting of the First State Bank and voted to approve the plan and contract of consolidation. Others were represented by proxies who voted like approval. It is to be inferred that some of such stockholders afterward deposited with the Farmers State Bank for exchange their stock in the First State Bank because their certificates were discovered in the files of the former and they made no explanation to avoid the inference. Other stockholders, defendants White,

did not attend the meeting and were not represented by proxies. None took any action, by notice, objection or otherwise, to question the consolidation or to deny he was a stockholder of the Farmers State Bank until after it was closed and the assessment was demanded.

Defendant William White makes the further claim that he was not a stockholder of the First State Bank at the time of consolidation because he had not paid the 50 per cent. assessment theretofore levied. It had been charged to his account in the bank but he claims the charge was without his knowledge or consent.

The statutes provide two methods of consolidation of State banks, (1) by transfer of assets and assumption of liabilities, under 3 Comp. Laws 1929, § 11954, in case a bank is winding up its business for the purpose of consolidation, and (2) by purchase of the capital stock for the purpose of retiring it, under 3 Comp. Laws 1929, § 11955. Both require approval of two-thirds of the capital stock of the consolidating bank and of the commissioner of the banking department.

While the contract of consolidation seems to be grounded particularly on section 11954, it suggests also some of the elements of section 11955. But comparison with the statutes will demonstrate that it cannot be fitted snugly into either section. Nor, if it could, would the statutes determine the issues here because neither section purports to compel a stockholder of a consolidating bank to become a stockholder of the consolidated bank on vote of others and without his own consent. Having served the purpose of establishing the legality of a consolidation, the statutes may be disregarded because the status of defendants must be found from the contract

of consolidation and their relation thereto.  89 A. L. R. 770, note.

Before examining the contract, however, the way should be cleared of some contentions of defendants arising out of the failure of the Farmers State Bank to properly register the stock ownership and issue and deliver the certificates.

It is contended the increase of capital stock of the Farmers State Bank was not valid because it had not been fully subscribed and actually paid in. 3 Comp. Laws 1929, § 11908. Subscription to corporate stock need not be in any stated form, but even may be deducible from the acts and conduct of a party. *Peninsula Leasing Co.* v. *Cody,* 161 Mich. 604; *Pacific National Bank* v. *Eaton,* 141 U. S. 227 (11 Sup. Ct. 984). The contract of consolidation was sufficient to constitute a subscription by some one, either the First State Bank or its stockholders. The assets turned over by the First State Bank had a book value, in excess of liabilities, equal to the increased capital and, therefore, paid it.

A certificate of stock is merely evidence of ownership of shares and its issue or possession is not necessary to constitute one a stockholder. One may be a stockholder though he is not so recorded on the books of the corporation. The failure of the Farmers State Bank to perform its duty to keep a proper record of stockholders did not affect ownership of the shares. *Foster* v. *Row,* 120 Mich. 1, 16, 19–23 (77 Am. St. Rep. 565); *May* v. *McQuillan,* 129 Mich. 392; *Auditor General* v. *Bassett's Estate,* 246 Mich. 440, 452; 60 A. L. R. 112, note; *Keyes* v. *American Life & Accident Ins. Co.,* 1 Fed. Supp. 512; *Chapman* v. *Denton* (Tex. Civ. App.), 268 S. W. 252. The stock, having been subscribed and paid for, was owned by some one.

The resolutions of the Farmers State Bank, authorizing the increase of capital, also appropriated it to the consolidation in performance of the agreement. Paragraph third of the contract provided for simultaneous trade of assets for stock and delivery and acceptance of the latter in full payment of the former. Consequently when the consolidation was completed the assets of the First State Bank belonged to the Farmers State Bank and, by appropriation and acceptance, the 150 shares of stock of the latter belonged to the parties entitled thereto under the contract.

While the contract speaks of "conversion," it provided no machinery for trading old stock for new stock. But it did specifically provide that the 150 shares be delivered to the First State Bank. Such definite provision must prevail over uncertain construction dependent upon extraneous evidence. All the parties, however, understood that the First State Bank was not to take and hold the stock in its corporate capacity and as a permanent investment. The contract itself declares their purpose was liquidation of the First State Bank and surrender of its charter. It expressly provided for delivery of the stock to the stockholders of the First State Bank in a stated proportion to their holdings in it. It is plain the First State Bank was merely a conduit through which the shares passed from the Farmers State Bank to the stockholders of the First State Bank.

So, in approving the consolidation and the contract therefor, those defendants who did approve it accepted the shares allotted to them and selected the status of stockholders of the Farmers State Bank. They actually became stockholders when the contract was performed by transfer of the business.

In addition, some of them afterward confirmed the status by depositing with the Farmers State Bank their stock in the First State Bank. This class of defendants were stockholders of the Farmers State Bank by express contract and assent.

Different considerations affect defendants White because they did not approve the consolidation by personal or proxy vote. Their status as stockholders of the Farmers State Bank rests in estoppel.

By the notice of stockholders' meeting, they were informed of its purpose and charged with knowledge of the plan and contract of consolidation and its adoption. *Littrell* v. *Craig,* 1 Fed. Supp. 491. They are held to have known that, upon completion of the consolidation, their status would be materially changed; that through assumption of the liabilities of the First State Bank by the Farmers State Bank, they would be relieved of statutory liability as stockholders of the former; that, in lieu thereof, however, and as an essential of such release through the consolidation, they would assume stock liability in the Farmers State Bank but in half the amount; that the plan was indivisible, operated on all stockholders alike and, unless all became stockholders of the Farmers State Bank, the consolidation could not proceed or, if it was completed, it would be a virtual fraud upon depositors unless their shares were sold elsewhere.

Under the circumstances, affirmative action was demanded of these defendants. They could not stand by, by silence induce others to proceed with the consolidation, take its benefits and cast its liabilities on others. While the situation required prompt election and action, defendants have not an excuse of lack of actual knowledge of the consolidation and of reasonable time to elect. They made no showing that they were not fully aware of all procedure and

developments. Although the consolidated bank continued in business for some four months, they did not deny that they were stockholders nor object to the consolidation until after the Farmers State Bank had closed. They remained in a position where they would have the benefit of release from liability in the First State Bank and of earnings of the Farmers State Bank if the project had been successful. The situation calling for affirmative action, they will not be permitted to deny status of stock ownership after the project had failed. *Derscheid* v. *Andrew* (C. C. A.), 34 Fed. (2d) 884; *Rogers & Lyon* v. *Cozart*, 192 N. C. 720 (135 S. E. 864). This case is to be distinguished from those in which the stockholders of a consolidating bank had merely the option of acquiring stock in a consolidated bank, the exercise of which required affirmative action on their part. In balancing equities, it may be noted that this ruling charges defendants with only half the liability they would have incurred had there been no consolidation and had the First State Bank failed.

The claim of William White that he was not a stockholder of the First State Bank at the time of consolidation is untenable, not only by reason of estoppel but as a legal proposition. Section 11941, 3 Comp. Laws 1929, does not terminate stock ownership on failure to pay assessment nor until sale of the stock is made, as provided therein.

We need not determine whether the stock of the First State Bank actually became vested in the Farmers State Bank by the consolidation. The contract is not clear upon this point, both sides of it have support, but it is not necessary to decision here.

A point is made that the receiver of the Farmers State Bank has filed a bill in equity to reform the contract of consolidation to provide that the Farm-

ers State Bank assumed only the liabilities shown on the books of the First State Bank. The bill would not bar this suit nor was the point sufficiently developed in the testimony to indicate that the bill has merit or affects the equities here.

Decree affirmed, with costs.

Potter, North, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred. Nelson Sharpe, C. J., did not sit.