*In re* BURGER'S ESTATE.

STEARS *v.* CULP.

1. BANKS AND BANKING—DIRECTORS' STOCK ASSESSMENT—NATURE.
   Directors' stock assessment levied to cover deficiency upon demand of State banking commissioner to make good an impairment of capital is not a personal liability of the stockholder but penalty for nonpayment is sale of his shares, issue of new certificate to purchaser and cancellation of original certificate (3 Comp. Laws 1929, § 11941).

2. SAME—DIRECTORS' STOCK ASSESSMENT—PAYMENT—LIQUIDATION.
   Payment of directors' stock assessment has no effect to discharge any part of an assessment levied by receiver or other officer in charge of bank in process of liquidation (3 Comp. Laws 1929, §§ 11941, 11945).

3. Same—Assessment—Conservators—Emergency Banking Law.

Order of State banking commissioner, levying stock assessment while bank was in charge of a conservator, issued pursuant to authority conferred upon commissioner by emergency banking law *held*, a levy pursuant to section of general banking law authorizing levy by bank's receiver rather than directors' stock assessment, notwithstanding order cancelling stockholder's stock recited a later date for assessment as that of date reorganization plan was proposed (3 Comp. Laws 1929, §§ 11941, 11945; Act No. 32, §§ 4, 5, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

4. Same—Emergency Banking Law—Stock Assessment—Courts.

Court sanction as to necessity or amount of stock assessment is not a prerequisite to levy by State banking commissioner under the emergency banking law although his acts are reviewable by the court on complaint of an interested party (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

5. Same—Stock Assessment—Liquidation—Impairment of Contracts.

Liability of stockholder to stock assessment by receiver or other officer in charge of liquidation of a bank is both statutory and contractual and, as a contract, it is entitled to protection of the impairment of obligation of contract clause of the Constitution (U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9; 3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

6. Same—Levy of Assessment for Liquidation—Condition Precedent.

Full liquidation of a bank is not a condition precedent to levy of an assessment on the stock.

7. Corporations—Liquidation—Dissolution.

While liquidation of a corporation is usually a step in its dissolution, the latter is not a necessary element of the former since liquidation means realization on assets and discharge of liabilities.

8. Banks and Banking—Emergency Banking Law—Conservators.

Conservator of a bank under emergency banking law was authorized to conduct the bank as a going concern only as to new deposits and assets; and his function as to the old business

was that of liquidation (Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

9. Same—Plan of Reorganization—Liquidation—Stock Assessment.

Plan for reorganization of bank whereby bank reopened with such capital stock as State banking commissioner should determine to be represented by sound assets; payment of certain public, trust and small deposits in full; retention of assets to cover certificates of the bank, payable within five years and representing 50 per cent. of the nonpreferred deposits, segregation of certain assets, placing them in trust and issuance of participation certificates representing the other 50 per cent. of nonpreferred deposits; substitution of bank for trust assets during two-year period, attachment of unlisted, concealed or undiscovered assets or liabilities to the trust and transfer of remaining assets in the trust after payment of its obligations and expenses to the bank *held*, method of liquidation justifying assessment of stock by State banking commissioner (3 Comp. Laws 1929, § 11945; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

10. Same—Liquidation.

The Constitution of the United States does not confer upon depositors of a bank a vested right to liquidation at the hands of a State official.

11. Same—Assessment—Reorganization Plan.

Assessment on bank stock, levied by State banking commissioner while bank was in charge of conservator *held*, part of reorganization plan providing for *an* assessment although such plan was not proposed until six weeks after levy, since the provision was for the benefit of creditors and the fact, not the time, of assessment is the matter of consequence (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

12. Same—Reorganization—No New Entity Created.

Reorganization of a bank *held*, not to create a new corporate entity.

13. Same—New Capital—General Mass of Assets to Pay Debts —Assessment.

Fact that new capital for reorganized bank came out of general mass of assets available to pay debts might have been a misappropriation thereof *held*, not to invalidate a previous stock

assessment, levied while bank was in charge of conservator, where such assessment became a part of such general mass; nor was liability for such assessment released by such diversion (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

14. SAME—ASSESSMENT—REORGANIZATION—WAIVER—AUTHORITY.

Liability of bank stockholder for assessment, levied by State banking commissioner, which was part of plan for reorganization of bank which plan involved the setting up of new capital *held*, not waived or released since statute authorizing levy does not confer authority to waive or release such liability without consent of creditors and plan of reorganization required its enforcement (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act. No. 95, Pub. Acts 1933).

15. SAME — ASSESSMENT — REORGANIZATION — CONSENT OF STOCK-HOLDER.

Adoption of plan of reorganization involving liability for assessment on bank stock, levied by State banking commissioner while bank was in charge of conservator *held*, under statute, to have been consented to by stockholder where he did not make objection to plan by any action when opportunity was afforded (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

16. SAME—TRUSTEES—PARTIES—ASSESSMENT.

Trustees under bank reorganization plan who had charge of certain assets, including assignment of uncollected assessments from stockholders, which were put in trust for 50 per cent. of nonpreferred creditors, *held*, proper parties plaintiff since they were liquidating agents of the bank and succeeded to legal rights of bank as it existed prior to reorganization (3 Comp. Laws 1929, § 11945; Act No. 32, §§ 4, 5, 7, 7a, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

BUSHNELL, J., dissenting.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted April 23, 1936. (Docket No. 47, Calendar No. 38,874.) Decided June 17, 1936. Rehearing denied September 2, 1936.

In the matter of the Estate of Charles M. Burger, deceased. C. T. Stears and others, trustees of the First Commercial Savings Bank of Constantine, Michigan, presented their claim for a bank stock assessment. Arthur N. Culp and August Nyberg, executors, objected thereto. From disallowance of claim by commissioners on claims, plaintiffs appealed to circuit court. Judgment for plaintiffs. Defendants appeal. Affirmed.

*Howard, Howard & Howard,* for plaintiffs.

*L. W. Beardsley* and *N. A. Cobb,* for defendants.

*David H. Crowley,* Attorney General, *Edmund E. Shepherd, Raymond W. Fox* and *Leslie D. Harrop,* Assistants Attorney General, and *Clark & Henry, amici curiæ.*

Fead, J. The appeal is from allowance of an assessment on bank stock as a claim against the estate of Charles M. Burger, deceased, less credit on account of available deposits.

The First Commercial Savings Bank of Constantine; capital $60,000, closed February 11, 1933, in pursuance of the governor's proclamation of a State banking holiday and did not reopen at the end of the succeeding general banking holiday. E. L. Estes was appointed conservator of the bank March 27th.

June 6th, the commissioner of the State banking department levied an assessment of 100 per cent. against the stockholders. July 18th, a reorganization plan was proposed. August 28th, a trust agreement covering segregated assets was executed. September 5th, the bank reopened with subscribed capital of $51,000 (afterward all paid in). The conservator was not discharged until August 8, 1934.

April 27, 1934, he gave Burger final notice to pay the assessment against him, Burger owning ten shares of stock.    May 28th, he gave Burger notice of an order, made by the banking commissioner, cancelling Burger's stock but specifically providing that cancellation did not relieve him of liability for the assessment.    Burger had knowledge of the various proceedings and took no action in objection.    He died November 23, 1934.

Many questions are raised and the outline of facts will be filled in as occasion demands.

Character and Time of Assessment.    The general banking law, Act No. 66, Pub. Acts 1929, 3 Comp. Laws 1929, § 11898 *et seq.*, a codification and revision of the original banking law of 1887, provides for two kinds of assessments.    Section 44 (§ 11941) authorizes the banking commissioner to require a bank to make good an impairment of its capital and, thereupon, the directors levy an assessment on the stock to cover the deficiency.    The assessment is not a personal liability of the stockholder but the penalty for nonpayment is sale of his shares, issue of new certificate to the purchaser and cancellation of the original certificate.    *First National Bank-Detroit* v. *Tennant*, 270 Mich. 653.

Section 48 (§ 11945) provides for a different and unrelated assessment.    Payment of assessment made under section 44 has no effect to discharge any part of an assessment levied under section 48.    *Reichert* v. *Peoples State Trust & Savings Bank*, 267 Mich. 543.    Section 48 (with provisions deleted as to stock held by executors, administrators, guardians, trustees and pledgees) reads:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof,

in addition to the said stock; * * * such liability may be enforced in a suit at law or in equity by any such bank in process of liquidation, or by any receiver, or other officer succeeding to the legal rights of said bank.''

Counsel for the estate attempt to fix the assessment as under section 44 by differentiating between the terms ''stock'' and ''statutory'' or ''individual'' liability as used in decisions, statutes and elsewhere. They also point to language in the reorganization papers, as that in the plan of reorganization proposed July 18th it was provided that the banking commissioner and governor ''shall immediately levy and proceed to collect to the fullest extent a 100 per cent. stock assessment against the stockholders of said bank;'' in the trust instrument it was said that ''an assessment on all of the capital stock of said bank equal to 100 per cent. of the par value of such stock has been levied;'' and in the order of cancellation of Burger's stock was the recital that the banking commissioner ''did on the 18th day of July, A. D. 1933, levy and assess an 100 per cent. stock assessment against the stockholders.''

Obviously the time and character of the assessment must be determined upon the thing done, not from the name given it nor the misrecital of dates.

The only levy of assessment in this case was on June 6, 1933. It recited that, from examination, it appeared that the ''assets'' (not capital) of the bank had been impaired so it could not pay its debts and it was necessary to levy an assessment on the stockholders. The order of levy was unequivocal and unambiguous, employing the language of section 48, and was not made in the terms or method of section 44. Moreover, it was levied while the bank was in charge of a conservator, under section 4, Act No. 32, Pub. Acts 1933, and the power to levy it was

conferred by section 5, as amended by Act No. 95, Pub. Acts 1933, which gave authority to levy an assessment only "within the meaning of section forty-eight" and did not refer to section 44.

We proceed, therefore, upon the basis that the assessment in suit was levied June 6, 1933, under section 48.

Background. Consideration of other issues may be aided by a brief statement of pertinent legislation.

Under the general banking law of 1929, two methods of liquidation, other than that incidental to consolidation of banks, are provided, the one voluntary and upon vote of stockholders (§ 11953) and the other through a receiver appointed by a court of chancery on petition of the banking commissioner (§ 11959, as amended by Act No. 7, Pub. Acts 1932).

The law (§ 11960) provides for reorganization of a bank in receivership if and when it can arrange to pay all its creditors, make good impairment of capital and pay the expense of receivership. Reorganization under this section was resorted to in some cases after 1929, by means of a moratorium agreement on the part of depositors, but it was unsatisfactory because nonassenting creditors were entitled to immediate payment in full. *Shekell* v. *Ypsilanti Savings Bank,* 267 Mich. 114.

As bank failures increased new remedies became necessary. Accordingly, by Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), effective April 22, 1932, the legislature added three sections to the general banking law, as ordinary, not emergency, legislation.

Section 65a, Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), provided for reorganization of a bank in receivership, or establishment of a new bank, upon plan approved by the banking commissioner and by depositors representing 85 per cent. of the deposit

liability and upon order of court. If the plan provides for assessment of stockholders and the court shall deem it necessary to satisfy the debts of the bank, it may order an assessment. *Fors* v. *Thoman,* 267 Mich. 148.

Section 65b, Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), authorizes reorganization of a bank on agreement of depositors representing 85 per cent. of the deposit liability without the necessity of prior receivership. If the conditions authorize application for appointment of a receiver, the banking commissioner may apply to a court for appointment of a custodian, pending reopening. The court may order assessment in case the plan provides for it.

Section 65c, Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), authorizes the State and municipalities to agree to reorganization.

The outstanding features of the act of 1932 are that reorganization is permitted without the necessity of prior receivership and that the court is authorized to determine the interests of nonassenting depositors and segregate and provide for liquidation of assets for their benefit as may be just.

When the banking holiday of 1933 was proclaimed at an end, a large number of banks were not permitted to reopen. The continuance of the financial debacle of 1929 not only had seriously impaired the worth of securities of general market, such as bonds, but it had destroyed, wholly or substantially, possibility of sale or immediate collection of other securities fundamentally sound, while the then value of commercial paper was largely speculative. Present liquidation would have been suicidal to depositors and stockholders alike. There was probability, if not surety, of large recoveries in time. The legislature was in session and was confronted by the necessity of providing machinery to protect depos-

itors and creditors of banks and also to continue banking facilities to the public. Accordingly, it enacted an emergency banking law, Act No. 32, Pub. Acts 1933, effective March 21, 1933, as amended by Act No. 95, Pub. Acts 1933, effective May 26th, supplemental to the general banking law and expiring by its own terms on June 1, 1935. The proceedings at bar are governed by such law. Its outstanding feature is that it transferred jurisdiction over banks, including appointment of receivers, from the courts to the banking commissioner, acting with approval of the governor—evidently in the interests of speedy administration and reconstruction of the banking structure. The number of banks reorganized under the law is not before us in this case, but 97 are referred to in *Robinson* v. *People's Bank of Leslie,* 266 Mich. 178 (92 A. L. R. 1251).

To avoid repetition, it may be said that all powers to be exercised by the banking commissioner under the acts were subject to approval by the governor.

Section 2 (Act No. 32, Pub. Acts 1933) empowered the banking commissioner to prescribe rules and regulations for the conduct of banks. Section 4 permitted him, on violation of such rules or on being satisfied that any of the conditions prescribed by the general banking law permitting the appointment of a receiver existed, to take over as conservator the custody and management of the bank and appoint a person to manage it. The commissioner appointed persons under this authority and called them conservators. We will so employ the word although, strictly, the law named the commissioner as conservator.

Section 5 (Act No. 95, Pub. Acts 1933) provided that when the commissioner took over the management of the bank under section 4, he could continue its operation and could levy the assessment pro-

vided by section 48 (§ 11945) of the general banking law. Section 6 (Act No. 32, Pub. Acts 1933) authorized the banking commissioner to appoint a receiver who should liquidate the bank under directions of the commissioner.

Section 7 (Act No. 95, Pub. Acts 1933) was a general provision for the reorganization of banks upon plan approved by the banking commissioner. It gave him the power to provide for segregation of assets, creation of trusts, to cancel, increase, decrease, issue or reissue and allot the stock of the bank and other broad authority. Within 30 days after the last publication of the plan any stockholder, depositor or creditor could have it reviewed in a court of chancery, ask a determination of his individual rights, and the court was authorized to make such decree as to him as would be fair and equitable.

"Failure to make such application within said thirty-day period by any such creditor, stockholder or depositor shall be deemed to be consent to such reorganization or plan."

Section 7a (Act No. 95, Pub. Acts 1933) provided for reorganization upon agreement of depositors (65 per cent.) and in accordance with Act No. 8, Pub. Acts 1932 (1st Ex. Sess.).

The contentions of counsel take a rather wide range and they will be considered *seriatim.*

NECESSITY FOR ASSESSMENT. The act of 1933 contained no language which required a court to pass upon the necessity or amount of an assessment as a prerequisite to its levy. On the contrary, the power to appoint a conservator to "operate" the bank or a receiver to liquidate it, upon which the authority to levy assessment was based, was left to the judgment of the banking commissioner. Moreover, sec-

tion 5 expressly authorized him, when conservator, to "levy, enforce, and collect the statutory and/or individual liability of the stockholder, within the meaning of section forty-eight." Also, the entire purport of the emergency act of 1933 was to confer upon the commissioner the powers of liquidation and reorganization possessed by the court under the general banking law, except that his acts were reviewable by the court on complaint of an interested person.

It would be misconstruction to read the emergency acts as incorporating in them the court procedure of the general banking law for levying assessments.

IMPAIRMENT OF CONTRACT. The liability of a stockholder under section 48 is both statutory and contractual. As a contract, it is entitled to protection of the impairment clause of the Constitution. *Lawrence* v. *DeBoer*, 273 Mich. 172; *Simons* v. *Groesbeck*, 268 Mich. 495. The contract is that (1) the stockholder is individually liable, equally and ratably, not one for another, (2) to an amount equal to 100 per cent. of the par value of his stock, (3) to satisfy the obligations of the bank. Upon the last clause of section 48 counsel urge an additional element of contract, (4) that the liability accrues only when the bank is in process of liquidation.

There is good argument that the contract liability of a stockholder is fixed in section 48 before the last clause is reached and that the latter pertains only to the remedy for enforcement, which remains within the control of the legislature and may be changed by it. But as the point has not been pressed, particularly with reference to the power of the legislature to change remedies in an emergency, *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398 (54 Sup. Ct. 231, 88 A. L. R. 1481); *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich.

644, we will accept (without deciding) the contract as so claimed. However, section 48 discloses no intention of the legislature to restrict its own power to provide such methods of liquidation of a bank as the future should render advisable. The most a stockholder could ask was that he should not be charged to pay an assessment except to satisfy obligations of the bank and until liquidation had begun. It is conceded that full liquidation is not a condition precedent to levy of assessment. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565); *American State Bank of Detroit* v. *Aaron,* 271 Mich. 147 (100 A. L. R. 1266).

LIQUIDATION. While liquidation of a corporation is usually a step in its dissolution, the latter is not a necessary element of the former. Under the general banking law, a bank in receivership (§ 11959) was in process of liquidation although under the next section (§ 11960) provision was made for its reorganization and resumption of business. Liquidation means realization on assets and discharge of liabilities.

When the assessment was levied, the banking commissioner was in charge of the bank as conservator, under section 5 (Act No. 95, Pub. Acts 1933). While this section assumed to give him power to continue "operation" of the bank, it specifically provided that all new deposits and assets arising therefrom should be segregated and the latter held especially for the former. The conservator was enjoined to conduct the business "for the best interest of the depositors, creditors, borrowers, and all parties in interest in such institution;" and he could "compromise, extend, renew, adjust or otherwise handle any right, claims and liabilities of such institution." In fact and effect, therefore, the conservator was authorized to conduct the bank as a going concern

only as to new deposits and assets; and his function as to the old business was that of liquidation. Liquidation had begun when the assessment was levied.

The plan for reorganization was the reopening of the bank with such capital as the commissioner should determine to be represented by sound assets; certain public, trust and small deposits were to be paid in full; assets were to be retained to cover certificates of the bank, payable within five years and representing 50 per cent. of the nonpreferred deposits; certain assets were to be segregated and put in trust, against which participation certificates were to be issued, representing the other 50 per cent. of nonpreferred deposits; for two years the bank could substitute its own assets for those of the trust; unlisted, concealed or undiscovered assets or liabilities were attached to the trust; any remaining assets in the trust after payment of all its obligations and expenses were to be transferred to the bank.

The record does not state the figures but when the bank reopened according to the plan it seems that selected assets equal in amount to the paid-in capital and the deposit liability remaining in the bank were retained by the bank and the balance of the assets representing the segregated 50 per cent. of deposits and the old capital structure of the bank were transferred to the trust fund.

That this was a method of liquidation of the bank admits of no doubt. The two-year conversion provision established the continued connection between the bank and the trust for the purpose of paying the liabilities. What happened was that the depositors accepted certain assets in payment of half their claims, the assets to be liquidated, not under forced sale by receiver, but under orderly procedure by a going bank. As to the other 50 per cent., the

process was purely liquidation. Of a plan of reorganization, with somewhat similar features, the court, in *Doty* v. *Love,* 295 U. S. 64 (55 Sup. Ct. 558, 96 A. L. R. 1438), said:

"If we look to the surface of the statute and no farther, there is not even colorable basis for the argument that the Constitution is infringed. All that the statute does upon its face is to change the method of liquidation. The assets of the business are to be devoted without impairment or diversion to the payment of the debts. As to this the statute is explicit. Act of 1932, chap. 251, § 3. In the discretion of the court of chancery a reopened bank is to take the place of the State superintendent for the purpose of gathering in the assets and discharging liabilities. The substitution may not be made unless the court is satisfied that the reopened bank is solvent and able to satisfy the debts to be assumed. Payment of the creditors is still the end to be attained, and resumption of business a means and nothing more. If debts are thereby swollen or assets made to shrink, the outcome is an unlooked for incident of a method of administration conceived to be more efficient than present sale and distribution. The Constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a State official. *Gibbes* v. *Zimmerman,* 290 U. S. 326, 332 (54 Sup. Ct. 140)."

Assessment Not Part of the Plan? This contention relates to the time of the assessment and goes back to the confusion in the reorganization papers, especially to the statement in the plan of July 18th, that the commissioner and governor "shall immediately" levy and collect the assessment. An assessment was part of the plan. It already had been levied June 6th and there was no need or occasion for another if, indeed, the first could have been waived. The provision in the plan was for the bene-

fit of creditors and the fact, not the time, of levy was the thing of consequence. Burger knew of the proceedings, and there is no claim of misunderstanding by him, injury to him, or other basis of estoppel in his favor arising out of the time of levy. The point is overtechnical.

Purpose of Assessment. It is urged that the assessment was levied, not to satisfy the obligations of the bank, but to provide capital for a "new" bank. This contention rests upon testimony that the new capital of the bank, $51,000, represented the assessments paid in, and if Burger had paid, the capital would have been increased accordingly and stock issued to him.

While it may be convenient, as a matter of differentiation, to refer to the bank after reorganization as a "new" bank, it was not a new corporate entity. The fact is so plain that demonstration is unnecessary. But reference may be made to notes in 99 A. L. R. 1228 and 80 A. L. R. 1490.

According to the official order of levy, the assessment was made to pay the debts of the bank. It then became an obligation due the bank from the stockholders for the benefit of creditors. It became part of the general mass of assets available to pay debts. The new capital came out of the mass. If the setting up of a capital for the reorganized bank was wrongful, it was a misappropriation of assets, subsequent to the accrual of liability for the assessment and, therefore, could not invalidate it.

Release of Assessment by Reorganization. The contention is made that the levy of assessment was released and discharged by the proceedings on reorganization, particularly by diversion of assets to set up a new capital of the bank and the cancellation of Burger's stock, whereby he lost all interest in the

bank and in the residue of assets, if any, in the trust after the debts are paid.

Whether Burger's estate will be injured by loss of residuary rights to assets cannot be determined until full liquidation.

Several reasons may be given for holding untenable the above contention on these and other grounds but two are sufficient.

Whatever may be the authority of the banking commissioner, under the statute, to cancel stock, it nevertheless remains that the liability for assessment under section 48 was imposed by statute for the benefit of creditors. *American State Bank of Detroit* v. *Aaron, supra; Fors* v. *Thoman, supra; Fors* v. *Farrell,* 271 Mich. 358. The statute gave the commissioner no authority to waive or release it without consent of creditors. The plan adopted by the creditors did not contemplate its waiver under any circumstances but, on the contrary, required its enforcement. Consequently there was no release of the liability.

Moreover, Burger knew that under the plan he was required to pay an assessment and had an opportunity to object by action thereto. Not having objected, the statute charges him with consent to the plan. Section 7 (Act No. 95, Pub. Acts 1933). See, also, *Lansing Drop Forge Co.* v. *American State Savings Bank,* 273 Mich. 124 (104 A. L. R. 1199); *Gibson* v. *Oswalt,* 269 Mich. 300.

Constitutional Questions. Counsel casually suggest there are constitutional questions involved. But the suggestion has not been fortified by argument or authorities to indicate that the questions are not fully covered by our former decisions. *Robinson* v. *People's Bank of Leslie, supra; Lansing Drop Forge Co.* v. *American State Savings Bank, supra; At-*

*torney General* v. *Union Guardian Trust Co.,* 273 Mich. 554.

TRUSTEES' RIGHT TO SUE. The trust instrument was executed by the bank and the trustees. July 16, 1934, the conservator, by direction of the banking commissioner, executed formal assignment to the trustees of the claim against Burger for assessment. A liquidating agent of 'the bank may sue for the assessment. *American State Bank of Detroit* v. *Aaron, supra.* The trustees may fall within such designation but, in any event, we think they are within the class of ''other officer succeeding to the legal rights of said bank,'' named in section 48.

Affirmed, with costs.

NORTH, C. J., and WIEST, BUTZEL, EDWARD M. SHARPE, and TOY, JJ., concurred with FEAD, J.

BUSHNELL, J. *(dissenting).* Being unable to agree with the conclusion reached by Mr. Justice FEAD, I state my views.

In my opinion, the determinative question is: Can a stockholder's assessment be collected under 3 Comp. Laws 1929, § 11945, when at the time of the attempted enforcement of the assessment the bank is continuing its ordinary business under its original charter?

The cited section (section 48 of the general banking act, Act No. 66, Pub. Acts 1929) provides:

''The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock. * * * Such liability may be enforced in a suit at law and in equity by any such bank *in process of liquidation,* or by any *receiver, or other officer succeeding to the legal rights of said bank.*''

Section 44 of the act (3 Comp. Laws 1929, § 11941) provides for assessments and their collections against stockholders of going banks and these being in the same act must be construed together. *Steiner* v. *Monroe State Savings Bank,* 274 Mich. 303.

This language of section 11945 is not new and was construed in *Foster* v. *Row,* 120 Mich. 1, 12 (77 Am. St. Rep. 565):

"It (the liability) can be enforced *only* by a bank in process of liquidation," etc.

A like understanding of the section is gained from the reasoning of the court's opinion in *American State Bank of Detroit* v. *Aaron,* 271 Mich. 147, 161 (100 A. L. R. 1266):

"Whenever a bank goes into voluntary liquidation and its insolvency is disclosed, 'Such liability may be enforced   *   *   *   by any such bank.' 3 Comp. Laws 1929, § 11945. And if, as in the instant case, the bank has selected a liquidating agent and for the purpose of liquidation has assigned to such agent all its assets, together with the contingent statutory liability and the power to enforce the same, then the agent in behalf of the bank in liquidation, may institute and prosecute a suit to enforce the statutory double liability to the extent required to pay the bank's obligations. As noted above, the statute contemplates enforcement of double liability incident to voluntary liquidation of an insolvent bank."

In the case before us the bank is neither "in process of liquidation" nor does it have a "receiver or any other officer succeeding to the legal rights of said bank." The last-quoted clause can have no broader meaning than that which precedes the conjunctive "or" and must refer to a liquidating agency. *American State Bank of Detroit* v. *Aaron, supra.*

But my Brother reasons that: "While liquidation of a corporation is usually a step in its dissolution, the latter is not a necessary element of the former," and says: "Under the general banking law, a bank in receivership (§ 11959) was in process of liquidation although under the next section (§ 11960) provision was made for its reorganization and resumption of business. Liquidation means realization on assets and discharge of liabilities."

There is no more connection between section 11960 and section 11945 than there is between section 11960 and section 11941. Arrangements to reopen the bank could and should be made just as well under conditions covered by section 11941. In fact, the words of section 11960, "impairment of capital stock" are exactly those of section 11941 and section 11960 is therefore applicable when "the impairment of capital stock" is made good.

It is difficult for me to agree that the facts here permit the conclusion that liquidation exists. A bank cannot be in the process of liquidation and at the same time be conducting business as a going concern. It cannot possess a double corporate personality of such an extremely contrasted nature.

"The very meaning of the word 'liquidation' implies the winding up of the affairs of a corporation." *Assets Realization Co.* v. *Howard,* 70 Misc. 651 (127 N. Y. Supp. 798, 816).

In citing the foregoing with approval, the New York court of appeals said:

"The word 'liquidation' is susceptible of but one meaning when construed in connection with the language of the banking law, and the circumstances to which it was intended to apply. The agreement of the parties that the superintendent took charge of the affairs of the corporation for the purpose of

'liquidating' its affairs necessarily excludes his possession for any other purpose. The word 'liquidation' is synonymous with a 'winding up or settlement with creditors.' In its general sense, it means 'the act or operation of winding up the affairs of a firm or company by getting in the assets, settling with its debtors and creditors, and appropriating the amount of profit or loss.' *Matter of Silkman,* 121 App. Div. 202, 206, 207 (105 N. Y. Supp. 872, 875), affirmed 190 N. Y. 560 (83 N. E. 1131); *Assets Realization Co.* v. *Howard,* 70 Misc. 651 (127 N. Y. Supp. 798), affirmed 152 App. Div. 900 (136 N. Y. Supp. 1130); 211 N. Y. 430 (105 N. E. 680).'' *Lafayette Trust Co.* v. *Beggs,* 213 N. Y. 280 (107 N. E. 644).

My Brother's authority, *Doty* v. *Love,* 295 U. S. 64 (55 Sup. Ct. 558, 96 A. L. R. 1438), does not, I think, sustain a different view. In that case, the rights of the stockholders were not before the court, the action being brought by dissenting creditors. The claim was made of denial of due process because the participating stockholders had been released from their personal liability. The court held that an error of judgment in the compromise of liabilities is not a taking of property or an impairment of contract in derogation of the restraints of the Constitution of the United States.

But it is argued that additional power was conferred by Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933, and especially sections 5 and 7 thereof.

Section 5 gives to the banking commissioner both the right and power, with the approval of the governor to proceed to wind up the affairs of a bank or continue its operation and to collect the stockholders' assessments within the meaning of section 11945. The right given is not an enlargement of a right already possessed. The language of the sec-

tion refers to the banking act of 1929, where this right is limited to the winding up process of liquidation.

If, as it is claimed, any additional liability is imposed on a stockholder by section 5, section 7, or any other portion of the 1933 acts, then it might properly be urged that the stockholder would be deprived of his property without due process. For under the facts presented in this cause, if collection is enforced, an additional liability is certainly imposed upon the stockholders.

"If any portion of assessment is not required to pay creditors or expenses of administration, it should be returned to assessed stockholders." *Reichert* v. *Farmers' & Workingmen's Savings Bank* (syllabus), 257 Mich. 500 (81 A. L. R. 1461).

Here it is proposed to subject the amount of stockholders' assessments collected together with other assets of the bank to the vicissitudes and hazards of a going banking business. Past experience certainly demonstrates that no one can accurately foretell the outcome of such a venture. How then can any portion of the assessment not required to pay creditors or expenses of administration be ascertained and returned to the assessed stockholders? If it cannot be returned then by what authority of law are the contributing stockholders deprived of their clear legal right to its return?

The conclusion seems to me to be inescapable that by the language of the banking act there could be no valid stockholders' assessment against the appellant estate under the facts presented.

The judgment should be vacated, without a new trial. Costs to appellant.

POTTER, J., took no part in this decision.