WILLIAM R. WHITE, as Superintendent of Banks of the State of New York, Plaintiff, v. ANTHONY F. MELILLO, Defendant.*

City Court of New York, Trial Term, New York County, April 19, 1937.

*David Asch*, for the plaintiff.

*Anthony J. Romagna*, for the defendant.

---

* Affd., without opinion, Appellate Term, First Dept., N. Y. L. J. Dec. 9, 1937, p. 2075.

KAHN, J. This is an action by the Superintendent of Banks of the State of New York to recover the assessment of twelve dollars per share against the defendant on 103¼ shares of stock of the Mercantile Bank and Trust Company alleged to have been owned by him when the assessment was made.

The facts are as follows:

The Superintendent of Banks took possession of the Chelsea Bank and Trust Company on December 23, 1930, and he continued in possession until sometime in 1931.

On March 12, 1931, the Superintendent of Banks entered into an agreement with individuals who constituted themselves a reorganization committee of the Mercantile Bank and Trust Company. The agreement in substance provided for the assumption by the Mercantile Bank of the assets and liabilities of the Chelsea Bank. It also provided that the Mercantile Bank was to have a capital and surplus of $1,500,000, of which $900,000 was to be capital represented by 75,000 shares of the par value of $12 each, and $600,000 as surplus. The capital and surplus were to consist of $1,000,000 cash which was to be realized on the sale of 50,000 shares of stock at $20 a share, and $500,000 which was the excess value placed upon the assets of the Chelsea Bank. The remaining 25,000 shares of stock were allotted to the stockholders of the Chelsea Bank and they were to receive one share of the Mercantile Bank for each four shares they held in the Chelsea Bank.

This agreement was subsequently approved by the Supreme Court and in accordance with its provisions a meeting of stockholders of the Chelsea Bank was called to obtain the necessary consent of two-thirds of its stockholders.

The defendant concedes that a notice of meeting of stockholders of the Chelsea Bank and Trust Company together with a circular informing him of the purpose of the meeting was received by him. He further concedes that he signed a proxy to vote his stock at that meeting and that his stock was voted in favor of adopting the agreement. Nothing further was done by defendant.

The defendant had pledged 120 shares of Chelsea stock with the Manufacturers Trust Company to secure a loan, and when the agreement was finally approved by the Supreme Court, the Manufacturers Trust Company, without the consent of the defendant, surrendered the shares of stock it held as a security for its loan and received therefor thirty shares of stock of the Mercantile Bank. This stock was issued in the name of the defendant. The defendant concedes liability for the assessment upon those thirty shares of stock.

Defendant resists payment on the remaining shares, contending that there was merely a sale of the assets of the Chelsea Bank to the Mercantile Bank and that it was not mandatory on his part to accept the shares of stock in the Mercantile Bank in exchange for the stock he held in the Chelsea Bank and that, therefore, he was not a stockholder in the Mercantile Bank. No case is cited by him in support of his contention.

The defendant overlooks the very feature of the agreement which distinguishes merely a sale of assets from a consolidation, merger or reorganization, and that is that the stockholders of the Chelsea Bank retained an interest in the Mercantile Bank.

In *Cortland Specialty Co.* v. *Commissioner of Internal Revenue* (60 F. [2d] 937, at p. 939) the court said: " A consolidation involves a dissolution of the companies consolidating and a transfer of corporate assets and franchises to a new company. In each case interests of the stockholders and creditors of any company which disappears remain and are retained against the surviving or newly created company."

Almost identical situations arose in the cases of *Littrell* v. *Craig* (1 F. Supp. 491) and *Gibson* v. *Oswalt* (269 Mich. 300; 257 N. W. 825), and in each case the defendant was held to respond for the assessment made.

In *Gibson* v. *Oswalt (supra,* at p. 310) the court had occasion to state:

" By the notice of stockholders' meeting, they were informed of its purpose and charged with knowledge of the plan and contract of consolidation and its adoption. *Littrell* v. *Craig,* 1 Fed. Sup. 491. They are held to have known that, upon completion of the consolidation, their status would be materially changed; that through assumption of the liabilities of the First State Bank by the Farmers State Bank, they would be relieved of statutory liability as stockholders of the former; that, in lieu thereof, however, and as an essential of such release through the consolidation, they would assume stock liability in the Farmers State Bank but in half the amount; that the plan was indivisible, operated on all stockholders alike and, unless all became stockholders of the Farmers State Bank, the consolidation could not proceed or, if it was completed, it would be a virtual fraud upon depositors unless their shares were sold elsewhere.

" Under the circumstances, affirmative action was demanded of these defendants. They could not stand by, by silence induce others to proceed with the consolidation, take its benefits and cast its liabilities on others. While the situation required prompt election and action, defendants have not an excuse of lack of actual

knowledge of the consolidation and of reasonable time to elect. They made no showing that they were not fully aware of all procedure and developments. Although the consolidated bank continued in business for some four months, they did not deny that they were stockholders nor object to the consolidation until after the Farmers State Bank had closed. They remained in a position where they would have the benefit of release from liability in the First State Bank and of earnings of the Farmers State Bank if the project had been successful. The situation calling for affirmative action, they will not be permitted to deny status of stock ownership after the project had failed."

The fact that the defendant never received the stock from the Mercantile Bank is no defense, for the court in *Gibson* v. *Oswalt* (*supra*, on p. 308) stated: " A certificate of stock is merely evidence of ownership of shares and its issue or possession is not necessary to constitute one a stockholder. One may be a stockholder though he is not so recorded on the books of the corporation."

The claim of the defendant that he is not a stockholder is untenable for the defendant's status as a stockholder rests in estoppel.

Judgment for plaintiff for the relief demanded in the complaint. Execution stayed ten days.